FAMILY WORSHIP CENTER CHURCH, INC., ON ITS OWN BEHALF AND DERIVATIVELY ON BEHALF OF HEALTH SCIENCE PARK, L.L.C.
v.
GARY N. SOLOMON, STEPHEN H. JONES, TERRY D. JONES AND HEALTH SCIENCE PARK, L.L.C.
No. 2006 CA 1261.
Court of Appeal of Louisiana, First Circuit.
June 8, 2007.
NOT DESIGNATED FOR PUBLICATION.
STEWART E. NILES, JR., LAWRENCE J. CENTOLA, III, BRYAN J. KNIGHT, JAMES CLARY, JERRY F. PEPPER, BARRY W. MILLER, Counsel for Plaintiff/Appellant, Family Worship Center Church, Inc.
CLAUDE F. REYNAUD, JR., JEANNE C. COMEAUX, LAUREN M. SMITH, SCOTT N. HENSGENS, Counsel for Defendants/Appellees, Gary N. Solomon, et al.
Before PARRO, GUIDRY, AND McCLENDON, JJ.
GUIDRY, J.
Family Worship Center Church, Inc., on its own behalf and derivatively on behalf of Health Science Park, L.L.C. (the Church), appeals from two judgments of the trial court granting defendants', Gary N. Solomon, Stephen H. Jones, Terry D. Jones, and Health Science Park, L.L.C. (collectively "Health Science Park"), motions for summary judgment. For the reasons that follow, we vacate the February 8, 2006 judgment and affirm in part and reverse in part the May 15, 2006 judgment.

FACTS AND PROCEDURAL HISTORY
On November 5, 2004, the Church and Health Science Park entered into an Option Agreement for the purchase and lease of certain real estate owned by the Church located near Bluebonnet Boulevard in Baton Rouge, Louisiana. In September of 2005, Health Science Park filed an action against the Church for the Church's failure to comply with its obligations under the Option Agreement. The Church filed a reconventional demand[1] However, on October 3, 2005, the parties entered into a settlement agreement, wherein they agreed that the Church would pay $600,000.00 to Health Science Park and the Church would be given a ninety-day opportunity to lease the property subject to the lease option. If at the end of the ninety-day period no payment had been made or no lease had been consummated, Health Science Park would have thirty-one days to exercise the lease option. All remaining claims of both Health Science Park and the Church were dismissed without prejudice.
Thereafter, on October 21, 2005, the Church filed a petition against Health Science Park, seeking a declaratory judgment that the November 5, 2004 Option Agreement was null and void and of no effect, and that Health Science Park had no rights or interest in any of the property, rights, or interests of the Church; a preliminary injunction; and damages.[2] On November 2, 2005, Health Science Park sent notice to the Church, accompanied by a check for $100,000.00, that it was extending the purchase option and declaring its intent to exercise the lease option if the Church failed to pay it $600,000.00 in accordance with the terms of the settlement agreement. Thereafter, on November 10, 2005, Health Science Park answered the petition and filed a reconventional demand, seeking dismissal of the Church's claims; declaratory judgment that the option agreement, as modified by the October 3, 2005 settlement agreement, is valid and enforceable; specific performance; injunctive relief; and damages.
On January 9, 2006, Health Science Park filed a motion for partial summary judgment as to the Church's first prayer for relief, which sought to have the Option Agreement declared null and void and of no effect and that Health Science Park had no rights or interest in or to any of the property, rights, or interests of the Church. Health Science Park also requested summary judgment to the extent that the Church's remaining prayers for relief in any way sought an order from the court prohibiting Health Science Park from asserting rights pursuant to the Option Agreement. On the same date, Health Science Park also filed a request for expedited hearing, stating that it would be prejudiced if the matter was not heard within the next month, as the ongoing litigation was an impediment to its exercise of the purchase option and possibly of the lease option. The trial court signed an order granting Health Science Park's request and setting the hearing on the motion for partial summary judgment for February 6, 2006. The Church, on January 13, 2006, filed a motion to continue the hearing on Health Science Park's motion for partial summary judgment, asserting that it had inadequate time to conduct discovery, and requesting that the court continue the hearing to a date no sooner than eight months from the date of filing of Health Science Park's motion. The trial court set a hearing on the Church's motion for February 6, 2006.
On January 17, 2006, the Church filed a first supplemental and amending petition and answer to Health Science Park's reconventional demand. Particularly, the Church sought to amend the first prayer of its petition to read that "judgment be rendered herein in favor of Family Worship Center Church, Inc., and against Health Science Park, L.L.C., reforming the November 5, 2004, Option Agreement to reflect the true intent of the parties" and stated that it wished to withdraw its demand that the option be rescinded, annulled, or avoided.
On January 24, 2006, the Church filed a supplemental and amending motion to continue hearing and a motion to dismiss Health Science Park's motion for a partial summary judgment as premature and moot and to dismiss its request for expedited hearing. Thereafter, the Church filed an opposition to Health Science Park's motion for partial summary judgment, with supporting documentation. In a reply memorandum, Health Science Park addressed the Church's mootness argument, stating that although the Church amended its petition to remove its claims for nullity, rescission, and avoidance, "what is still at issue [pursuant to Health Science Park's reconventional demand] is for the court to issue a ruling ... that the Option Agreement of November 5, 2004, is valid and enforceable, not subject to rescission because of any vice of consent, dismissing all such claims of [the Church], with prejudice."
Following the February 6, 2006 hearing on Health Science Park's motion for partial summary judgment, the trial court signed a judgment on February 8, 2006, granting Health Science Park's motion and dismissing all of the Church's claims for annulment and rescission of the November 5, 2004 Option Agreement with prejudice.[3] The Church subsequently filed a motion for reconsideration on February 21, 2006, which was denied. On the same date, the Church sent a letter to Health Science Park, whereby it notified Health Science Park that it was exercising its legal right to terminate the November 5, 2004 Option Agreement because of the defaults and breaches of Health Science Park. As stated in the letter, the Church returned Health Science Park's check in the amount of $50,000.00 due to Health Science Park's improper effort to extend the lease option and reserved and specifically did not waive any other breaches of the option, defaults, or other acts of non-compliance with the option terms.
Also on February 21, 2006, Health Science Park filed an amended answer to the Church's first supplemental and amended petition and also filed an amended reconventional demand, asserting that the February 21, 2006 letter could not terminate the irrevocable Option Agreement and alternatively, that the letter constituted an anticipatory breach of the Option Agreement, and seeking specific performance, damages, and an injunction. Thereafter, on February 27, 2006, Health Science Park filed a motion for summary judgment on the Church's remaining claims that were not dismissed in the February 8, 2006 judgment, including claims for reformation and damages.
On March 24, 2006, the Church filed a motion for partial summary judgment requesting that the court, among other things, declare that Health Science Park breached the terms of the Option Agreement and therefore was not entitled to enforce any of its rights under the option and/or find that the Church properly terminated the Option Agreement. A hearing on this motion was scheduled for July 24, 2006.[4]
On April 5, 2006, the Church sought leave of the trial court to file a second supplemental and amended petition. Following an April 10, 2006 hearing on Health Science Park's motion for summary judgment, the trial court signed a judgment on May 15, 2006, dismissing all of the Church's claims with prejudice and denying the Church's request to file its second supplemental and amended petition. The Church now appeals from this judgment and the judgment rendered on February 8, 2006.[5]

DISCUSSION

Standard of Review
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Walston v. Lakeview Regional Medical Center, 99-1920, p. 3 (La. App. 1st Cir. 9/22/00), 768 So. 2d 238, 240, writ denied, 00-2936 (La. 12/15/00), 777 So. 2d 1229. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257, p. 7 (La. 2/29/00), 755 So. 2d 226, 230-231.
On a motion for summary judgment, if the moving party will not bear the burden of proof at trial on the matter before the court on the motion, the moving party must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment must be granted. La. C.C.P. art. 966(C)(2); Boland v. West Feliciana Parish Police Jury, 03-1297, p. 4 (La. App. 1st Cir. 6/25/04), 878 So. 2d 808, 813, writ denied, 04-2286 (La. 11/24/04), 888 So. 2d 231.
A "genuine issue" is a triable issue. More precisely, an issue is genuine if reasonable persons could disagree. In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 27 (La. 7/5/94), 639 So. 2d 730, 751.
A fact is "material" when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Simply put, a material fact is one that would matter on the trial of the merits. Smith, 93-2512 at p. 27, 639 So. 2d at 751.

Motion for Partial Summary JudgmentFebruary 8, 2006 Judgment
In opposition to Health Science Park's motion for partial summary judgment, and again on appeal, the Church contends that the motion for partial summary judgment is moot because the Church removed, by way of an amended and supplemental petition, its prayer for relief seeking rescission, nullity, and avoidance of the option agreement. From our review of the record, we agree.
Health Science Park's motion for partial summary judgment specifically addressed and sought the dismissal of the Church's first prayer for relief. In that prayer, the Church requested:
Judgment be rendered herein in favor of Family Worship Center Church, Inc., and against Health Science Park, L.L.C., declaring and decreeing that the option agreement entered into between the said parties on November 5, 2004 and any previous option agreements entered into between said parties is null and void and of no effect whatsoever, and that HSP has no rights or interest in or to any of the property, rights or interest of the Church.
Thereafter, the Church amended its petition to withdraw its demand that the option agreement be rescinded, annulled, or avoided and amended its prayer to request that "[j]udgment be rendered herein in favor of Family Worship Center Church, Inc., and against Health Science Park, L.L.C., reforming the November 5, 2004, Option Agreement to reflect the true intent of the parties."
Health Science Park, however, asserts that the issue of the validity and enforceability of the option agreement, and accordingly the Church's claims for rescission, nullity, and avoidance, are still properly before the court pursuant to Health Science Park's reconventional demand. However, in filing its motion for partial summary judgment, Health Science Park only addressed the Church's first prayer for relief detailed above and did not seek relief pursuant to its reconventional demand.
Consequently, because the pleadings in the record indicate that neither party wants to have the agreement rescinded, but rather, wants to have the agreement either enforced as written or modified to reflect the true understanding and intent of the parties, the issue of rescission is no longer a contested issue before the court. Accordingly, Health Science Park's motion for partial summary judgment on the issues of rescission, nullity, and avoidance is moot. Therefore, we vacate the trial court's February 8, 2006 judgment and dismiss Health Science Park's motion for partial summary judgment as moot.[6]

Motion for Summary JudgmentMay 15, 2006 Judgment
We now address Health Science Park's motion for summary judgment seeking to dismiss the remaining claims of the Church. Health Science Park states in its memorandum that it is uncertain as to what these "remaining claims" are because the pleadings filed by the Church are vague.[7] However, Health Science Park attempts to address each claim, which it believes, based on the pleadings filed by the Church, is before the court and why those claims should be dismissed. On appeal, the Church only briefs and assigns as error the trial court's dismissal of its claims for termination, breach of contract, reformation, unfair trade practices, securities violations, and abuse of process.[8] We will now address each of these arguments.
First, we note that in seeking summary judgment, Health Science Park specifically stated in its reply memorandum that "[Health Science Park's] alleged breach of the Option Agreement is not now before the Court." Accordingly, any claims that the Church may have based on any alleged breach of the Option Agreement, i.e., breach of contract or termination because of breach of contract, were not properly before the trial court on Health Science Park's motion for summary judgment. See Hoover v. Hoover, 01-2200, p. 8 (La. 4/3/02), 813 So. 2d 329, 334 (finding that a court cannot render a summary judgment dismissing a claim which has not been adequately placed at issue before the court by the mover). In fact, as stated above, the issues of termination and breach of contract were the subject of a separate motion for partial summary judgment filed by the Church and that motion was denied at a hearing on August 28, 2006. The judgment relating to this motion is currently pending before this court on a supervisory writ application. Family Worship Center Church, Inc. v. Solomon, 2006 CW 2143. As such, these claims were clearly not before the trial court on Health Science Park's motion for summary judgment, and the trial court erred in dismissing them.
The Church next asserts that the trial court erred in dismissing its claim for reformation. A contract may be reformed as an equitable remedy, in order to correct mistakes in a written instrument due to fraud or error and to make the instrument accurately express the true intent and agreement of the parties. See Fireman's Fund Insurance Company v. Bulliard Farm, Inc., 05-336, p. 3 (La. App. 3rd Cir. 11/2/05), 915 So. 2d 1014, 1017; see also Samuels v. State Farm Mutual Automobile Insurance Company, 06-0034, p. 7 (La. 10/17/06), 939 So. 2d 1235, 1240; Bass v. Coupel, 93-1270, p. 15 (La. App. 1st Cir. 6/23/95), 671 So. 2d 344, 353, writ denied, 95-3094 (La. 3/15/96), 669 So. 2d 426. In the absence of fraud, the party seeking reformation has the burden of proving an antecedent agreement, as well as mutual error in committing the agreement to writing. See Samuels, 06-0034 at p. 7, 939 So. 2d at 1240; see also Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 (La. App. 1st Cir. 3/11/94), 634 So. 2d 466, 478, writ denied, 94-0906 (La. 6/17/94), 638 So. 2d 1094.
In seeking summary judgment relative to this claim, Health Science Park asserted that the Church could not establish that there was a mutual error in confecting the Option Agreement. Additionally, responding to the Church's assertion that mutual error did not need to be proven because the Church asserted fraud, Health Science Park stated that the issue of fraud had been resolved in the February 8, 2006 judgment, granting Health Science Park's motion for partial summary judgment and dismissing the Church's claims for annulment and rescission. Finally, Health Science Park reiterated the language of the Option Agreement regarding any alleged restrictions on the use of the property and that such agreement supersedes all prior discussions and agreements between the parties. In support of its argument, Health Science Park attached copies of the February 8, 2006 judgment and the Option Agreement to its memorandum. However, we find this evidence is insufficient for Health Science Park to meet its burden in establishing that the Church cannot meet an essential element of its claim for reformation.
As stated above, a contract may be reformed in order to correct mistakes in a written instrument due to fraud or error and to make the instrument accurately express the true intent and agreement of the parties. Fireman's Fund Insurance Co., 05-336 at p. 3, 915 So. 2d at 1017. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction. La. C.C. art. 1953. Therefore, to the extent that the Church has made an allegation of fraud, Health Science Park cannot merely rely on the lack of evidence of mutual error, which is an alternative basis for seeking reformation, in meeting its initial burden on its motion for summary judgment.
First, Health Science Park's reliance on the trial court's February 8, 2006 judgment is misplaced. The judgment as written only addresses the Church's claims for "annulment" and "rescission." The judgment does not say that any claim that alleges fraud is dismissed. Further, as noted above, we have vacated the trial court's February 8, 2006 judgment and have dismissed Health Science Park's motion for partial summary judgment as moot.
Additionally, Health Science Park relies on the language within the four corners of the Option Agreement to assert that any misrepresentation alleged by the Church does not have anything to do with the Option Agreement as executed. Particularly, Health Science Park asserts that the Option Agreement as executed does not limit use of the property to the building of a new Louisiana State University (LSU) Charity Hospital. However, Health Science Park does not address any of the Church's arguments regarding alleged false representations or omissions, nor does it otherwise address any of the other elements of the Church's fraud claim. Therefore, we find that the evidence submitted by Health Science Park in seeking dismissal of the Church's claim for reformation was insufficient to point out a lack of factual support for one or more elements as to the Church's fraud claim. Accordingly, the trial court erred in granting summary judgment on this issue and dismissing the Church's reformation claim.
The Church also asserts that the trial court erred in dismissing two other claims relating to the alleged fraud committed by Health Science Park its claims for unfair trade practices and securities violations. A cause of action for unfair trade practices is governed by the provisions of the Unfair Trade Practices and Consumer Protection Law set forth in La. R.S. 51:1401, et seq. Specifically, La. R.S. 51:1405(A) provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The broad language of this statute necessarily requires a case-by-case determination by the courts of what constitutes unfair competition or an unfair trade practice. Capitol House Preservation Company, L.L.C. v. Perryman Consultants, Inc., 98-1514, p. 10 (La. App. 1st Cir. 12/10/98), 725 So. 2d 523, 529.
It is well settled that a practice is considered unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers or business competitors. Copeland v. Treasure Chest Casino, L.L.C., 01-1122, p. 4 (La. App. 1st Cir. 6/21/02), 822 So. 2d 68, 71. A practice is deceptive when it involves fraud, misrepresentation, breach of fiduciary duty, or other unethical conduct. See United Group of National Paper Distributors, Inc. v. Vinson, 27,739, p. 10 (La. App. 2nd Cir. 1/25/96), 666 So. 2d 1338, 1346, writ denied, 96-0714 (La. 9/27/96), 679 So. 2d 1358. However, the Unfair Trade Practices and Consumer Protection Law does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions. Harris v. Poche, 05-0664, p. 7 (La. App. 4th Cir. 4/12/06), 930 So. 2d 165, 171, writ denied, 06-1113 (La. 10/6/06), 938 So. 2d 74. Louisiana Revised Statute 51:1409(A) confers a private right of action for damages on "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405."
In support of its motion for summary judgment on this issue, Health Science Park urged that the Noerr-Pennington doctrine[9] precluded liability from any claim related to the filing of the first lawsuit or any press release related thereto. Additionally, Health Science Park asserted that it was merely attempting to enforce its rights under the Option Agreement and therefore, such practice could not be unfair. However, in opposing Health Science Park's motion, the Church did not initially address the Noerr-Pennington doctrine, but argued that the lawsuit was initiated solely to prevent the Church from leasing its property to procuring agents for the federal government. Additionally, the Church re-asserted that the fraudulent representations by Health Science Park supported its claim for unfair trade practices. However, the Church also raised, for the first time, that Health Science Park improperly recorded the Option Agreement and unilaterally attached exhibits in the public records, thereby removing the Church's property from commerce and putting a cloud on the Church's title, and that Health Science Park failed to act in the best interest of its shareholders by allowing an attorney for Health Science Park to negotiate an agreement relating to the LSU Charity Hospital project with a competitor.[10]
Health Science Park replied by asserting that the new allegations relating to unfair trade practices and attorney conflict were not properly before the court, as they were raised for the first time in the Church's opposition to the summary judgment. However, Health Science Park addressed all of the Church's allegations as follows: (1) the Church did not address Noerr-Pennington immunity in regard to the filing of the first lawsuit; (2) Health Science Park recorded the Option Agreement in the public records so as to place third parties on notice of its existence, which is consistent with real estate practice; (3) protection of its rights under the Option Agreement is not oppressive or an offense to public policy; (4) the Church has no standing to assert any derivative claim;[11] and (5) the language of the Option Agreement resolves any involvement of LSU. The Church filed a rebuttal memorandum, stating that the Noerr-Pennington doctrine did not apply to its allegations relating to the filing of the first lawsuit because the lawsuit was initiated for an improper purpose, and that it otherwise did not apply to the remaining claims of unfair trade practices.
In reviewing the merits of these assertions, we first address the Church's claim that Health Science Park did not act in the best interest of its shareholders by allowing its attorney to negotiate an agreement relating to the LSU Charity Hospital project with a competitor. Health Science Park argues that the Church does not have standing to bring this derivative claim because all facts asserted in support of this claim predate the Church acquiring an interest in Health Science Park.
This court has previously stated that in order for a plaintiff to have standing, and therefore a right of action to institute a derivative action, it must meet two requirements: (1) the plaintiff must have owned stock in the defendant corporation at the time of the transaction of which it complains, the so-called "contemporaneous ownership" requirement, and (2) the plaintiff must be a shareholder of the defendant corporation at the time suit is brought. See Christopher v. Liberty Oil & Gas Corporation, 94-2280, p. 3 (La. App. 1st Cir. 10/6/95), 665 So. 2d 410, 411, writ denied, 96-0478 (La. 3/29/96), 670 So. 2d 1229. In support of its motion, Health Science Park referred to paragraph twentyseven of the Option Agreement indicating that the Church did not become a member of Health Science Park until the date of the option, November 5, 2004. This fact is also corroborated by the affidavit of Terry Jones. Further, Health Science Park relied on the deposition testimony of Stephen Jones wherein he stated that the attorney's request of Health Science Park to waive a conflict so that other negotiations could be conducted in regard to the LSU Charity Hospital project was in the summer of 2004. Accordingly, Health Science Park pointed out that the Church did not meet the "contemporaneous ownership" requirement and therefore, shifted the burden to the Church to demonstrate that it had standing to bring this derivative claim. However, from our review of the record, the Church failed to present any contradictory evidence on this issue. Accordingly, the trial court was correct in dismissing this derivative claim.
Additionally, the allegation relating to the recording of the Option Agreement seems to be inextricably linked to the claim regarding the filing of the lawsuit, as the Church contends that both were done ultimately to prevent the Church from leasing its property to third parties. However, the Church did not present sufficient factual evidence as to this ulterior purpose; rather, the Church relied on the conclusory factual assertions of Reverend Swaggart and Barry Miller. It is well settled that affidavits devoid of specific underlying facts to support conclusions of ultimate fact are not legally sufficient to defeat a motion for summary judgment. Miller v. Superior Shipyard and Fabrication, Inc., 01-2683, p. 6 (La. App. 1st Cir. 11/8/02), 836 So. 2d 200, 204; Dumas v. Angus Chemical Co., 31,969, p. 7 (La. App. 2nd Cir. 8/20/99), 742 So. 2d 655, 661, writ not considered, 99-2750 (La. 11/5/99), 751 So. 2d 237. Conversely, the Option Agreement specifically allows the recording of any part of the Option Agreement in the public records. Additionally, the uncontradicted deposition testimony of Stephen Jones, a defendant and member of Health Science Park, indicated that Health Science Park filed suit because the Church was denying it access to the subject property and was otherwise acting inconsistent with the terms of the Option Agreement. According to Stephen Jones, Health Science Park was merely attempting to "make sure [the] option was held up." Additionally, the affidavit of Terry Jones corroborates this by stating that the suit was filed because Health Science Park was denied reasonable access to the subject property and to enforce its rights under the exclusive and irrevocable Option Agreement. This court has previously determined that protecting one's rights under a contract is not an offense to any public policy and is not unethical or oppressive such as to be an unfair trade practice. Inka's S'coolwear, Inc. v. School Time, L.L.C., 97-2271, pp. 10-11 (La. App. 1st Cir. 11/6/98), 725 So. 2d 496, 502. Accordingly, we find that the Church failed to produce evidence that there exists a genuine issue of material fact as to these allegations, which would preclude the granting of summary judgment.
The Church, however, also contends that Health Science Park committed an unfair trade practice when it induced the Church to enter into the Option Agreement based on its fraudulent representations. Specifically, the Church reiterates that Health Science Park misrepresented that the sole purpose of the Option Agreement was for the building of the new LSU Charity Hospital and that Health Science Park misrepresented its contacts and standing with LSU. However, in seeking summary judgment on this issue, Health Science Park again relied only on its assertion that the Option Agreement resolves any issue or allegation as to LSU. As stated previously in regard to the Church's reformation claim, Health Science Park failed to address the specific elements of the Church's claim. Health Science Park failed to present any argument or factual evidence that it did not make any misrepresentations to the Church, or that the Church could not otherwise establish fraud or that any alleged fraud was not an unfair or deceptive practice. Therefore, we find that Health Science Park again failed to meet its initial burden of pointing out that the Church could not establish one or more elements essential to its claim for unfair trade practices based on fraudulent inducement.
The Church also asserts that Health Science Park's fraudulent representations amount to a violation of the Louisiana Securities Law, La. R.S. 51:701, et seq. Louisiana Revised Statute 51:712(A)(2) provides, that it shall be unlawful for any person "No offer to sell or to sell a security by means of any oral or written untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, if such person in the exercise of reasonable care could not have known of the untruth or omission." Accordingly, in order to prevail in an action under the Louisiana Securities Law, the plaintiff must show: (1) the defendant made a false or misleading statement of material fact or failed to state a material fact necessary in order to make the statement not misleading; (2) the plaintiff did not know of the untruth or omission; and (3) the defendant knew, or in the exercise of reasonable diligence, could have known, of the untruth or omission. See Ponthier v. Manalla, 06-632, p. (La. App. 5th Cir. 1/30/07), So. 2d Taylor v. First Jersey Securities, Inc., 533 So. 2d 1383, 1385-1386 (La. App. 4th Cir. 1988), writs denied, 538 So. 2d 593 and 594 (La. 1989).
In seeking summary judgment on this issue, Health Science Park asserted that any alleged representation or omission regarding LSU is irrelevant and immaterial because the agreement as written does not limit use of the property to LSU. However, in opposition, the Church submitted testimonial and documentary evidence showing that Health Science Park represented that the subject property would only be used for the LSU Charity Hospital project, that such representation was paramount in the Church's decision to grant the option to Health Science Park, and that this was the only reason the Church agreed to grant a new option. Additionally, the affidavit of Terry Jones indicates that, at the time Health Science Park negotiated the Option Agreement, he did not want to be limited to LSU. Therefore, from our de novo review of the record, we find that the Church produced factual support sufficient to create a genuine issue of material fact so as to overcome Health Science Park's motion for summary judgment on this claim. Accordingly, the trial court erred in dismissing the securities law claim.
Finally, the Church asserts that the trial court erred in dismissing its claim for abuse of process. The essential elements of a cause of action for abuse of process are (1) the existence of an ulterior purpose and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. Waguespack, Seago and Carmichael (A PLC) v. Lincoln, 99-2016, p. 5 (La. App. 1st Cir. 9/22/00), 768 So. 2d 287, 290-291. A legal and legitimate use of process to effect the result which such process is designed by law to accomplish is not an abuse thereof. Regular use of process cannot constitute abuse even though the user was actuated by a wrongful motive, purpose, or intent or by malice. Waguespack, 99-2016 at p. 6, 768 So. 2d at 291; Mini-Togs, Inc. v. Young, 354 So. 2d 1389, 1390 (La. App. 2nd Cir. 1978). Accordingly, in order to prevail, an abuse must be through an illegal, improper, or irregular use of process.
However, as indicated in our discussion of the Church's unfair trade practices claims, the Church has failed to produce evidence of an ulterior purpose. The Church again relies on the conclusory statement in Barry Miller's affidavit that Health Science Park's ulterior motive in initiating the first lawsuit was to remove the Church's property from commerce, thereby preventing the Church from leasing its property to third parties. As stated above, this conclusory statement, not supported by any underlying facts or personal knowledge, is insufficient, especially in light of the uncontradicted testimony of Stephen Jones and Terry Jones as detailed above. Therefore, we find that the Church did not produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden at trial. Accordingly, there is no genuine issue of material fact as to the claim for abuse of process, and the granting of summary judgment was appropriate.
Finally, we address the Church's argument that the trial court erred in denying its request to file a second supplemental and amending petition to clarify its claims. The law takes a liberal approach toward allowing amended pleadings to promote the interests of justice. Reeder v. North, 97-0239, p. 15 (La. 10/21/97), 701 So. 2d 1291, 1299. As a general rule, a trial court has much discretion in granting amendments to pleadings after an answer has been filed; therefore, a trial court's ruling on whether to grant an amendment to the pleadings will not be disturbed on appeal absent an abuse of discretion. Heritage Worldwide, Inc. v. Jimmy Swaggart Ministries, 95-0484, p. 4 (La. App. 1st Cir. 11/16/95), 665 So. 2d 523, 527, writ denied, 96-0415 (La. 3/29/96), 670 So. 2d 1233.
From our review of the record, and consistent with our determination of the merits of the motion for summary judgment, we find that the trial court abused its discretion in denying the Church's request to file a second supplemental and amending petition. The trial court indicated that it was not going to allow the Church to avoid a summary judgment by filing another amended petition. However, because we reverse the trial court's granting of summary judgment as to the majority of the Church's claims, and considering that this case had only been pending for six months, with only four months of discovery, at the time of the hearing on the second summary judgment motion, with no set trial date, we find that the trial court abused its discretion in failing to grant the Church's request to file a second supplemental and amending petition.

CONCLUSION
For the foregoing reasons, we vacate the trial court's February 8, 2006 judgment and dismiss Health Science Park's motion for partial summary judgment as moot. We affirm those portions of the trial court's May 15, 2006 judgment, which had granted summary judgment and dismissed the Church's claims for unfair trade practices relating to Health Science Park's filing of the first lawsuit, recordation of the Option Agreement, and failure to act in the best interest of its shareholders. We also affirm the trial court's granting of summary judgment and dismissal of the Church's abuse of process claim. However, we reverse those portions of the trial court's May 15, 2006 judgment, which had granted summary judgment and dismissed the Church's claims for reformation of the Option Agreement, securities law violations, and unfair trade practices related to Health Science Park's fraudulent inducement. Additionally, we reverse that portion of the May 15, 2006 judgment that denied the Church leave of court to file a second supplemental and amending petition. This case is remanded to the trial court for further proceedings consistent with this opinion. All costs of this appeal are to be borne equally by the parties.
FEBRUARY 8, 2006 JUDGMENT VACATED; MOTION FOR PARTIAL SUMMARY JUDGMENT DISMISSED; MAY 15, 2006 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] These actions were assigned to Division "D" of the Nineteenth Judicial District Court before the Honorable Janice Clark.
[2] This action was assigned to Division "E" of the Nineteenth Judicial District Court before the Honorable William A. Morvant.
[3] The court minutes reflect the court denied the "motion to continue as moot."
[4] Following a hearing on this motion on August 28, 2006, the trial court denied the Church's request for summary judgment, indicating there were genuine issues of material fact precluding the granting of summary judgment. This denial is the subject of a writ application currently pending before this court. Family Worship Center Church, Inc. v. Solomon, 2006 CW 2143.
[5] the Church initially filed a supervisory writ with this Court seeking review of the February 8, 2006 judgment. However, during the pendency of the writ, this court learned of the trial court's ruling dismissing all of the Church's claims with prejudice. As such, citing People of the Living God v. Chantilly Corp., 251 La. 943, 207 So. 2d 752, 753 (1968), this court denied the Church's supervisory writ, stating that the trial court's judgment dismissing all of the Church's remaining claims is an appealable judgment, and this court can consider the correctness of the interlocutory judgment, rendered on February 8, 2006, on appeal.
[6] Based on our determination, we pretermit the Church's remaining assignments of error relating to this judgment.
[7] We note that Health Science Park failed to object to the vagueness of the Church's claims by way of a dilatory exception prior to or contemporaneous with the filing of its answer and as such, any assertion regarding vagueness has been waived.
[8] The Church did not assert as error or brief the dismissal of any of its other claims. The Church does assert the trial court erred in dismissing its relative simulation claim. However, this claim was not raised in any pleading prior to the Church's second supplemental and amending petition, which the trial court did not allow to be filed. Therefore, this claim was not before the court on Health Science Park's motion for summary judgment.
[9] See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961) (finding that individuals seeking anticompetitive action from the government are afforded immunity).
[10] The Church also asserted for the first time that Health Science Park committed an unfair trade practice by seeking to enforce an option that it had breached. However, as stated previously, Health Science Park specifically stated to the court that the issue of whether Health Science Park breached the Option Agreement was not before the court on the motion for summary judgment.
[11] In its memorandum in support of its motion for summary judgment, Health Science Park also argued separately that the Church did not meet the necessary criteria to bring a derivative action.