939 So.2d 1235 (2006)
Mark SAMUELS, Individually and on Behalf of his Minor Children, Geoffrey Samuels, Eric Samuels and Naomi Samuels and Madilyn Samuels
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, State Farm Fire & Casualty Insurance Company, Evanston Insurance Company and Alvin Samuels.
No. 2006-C-0034.
Supreme Court of Louisiana.
October 17, 2006.
*1237 Porteous, Hainkel & Johnson, C. Gordon Johnson, Jr., Nicholas C. Gristina, New Orleans, for Applicant.
Deutsch, Kerrigan & Stiles, Joseph L. McReynolds, Kristen M. Baumer, Robert E. Kerrigan, Jr., New Orleans, Nowalsky, Bronston & Gothard, Edward P. Gothard, Metairie, for Respondent.
VICTORY, J.
The issue in this insurance policy dispute is whether, where an insurance agent makes a clerical error on the declarations page of a policy, the policy can be reformed to reflect the true intent of the parties. After reviewing the record and the applicable law, we hold that, under the facts and circumstances of this case, the error can be corrected to reflect the mutual intent of the parties. Accordingly, we affirm the judgment of the court of appeal.

FACTS AND PROCEDURAL HISTORY
On November 20, 2000, Alvin Samuels was operating a 1998 Chrysler Plymouth Grand Voyager owned by his son, Mark Samuels, when the vehicle was involved in a serious, single car accident. During this accident, Mark's wife, Patti Samuels, was ejected from the vehicle and fatally injured at the scene. Mark and their children, Geoffrey, Eric and Naomi Samuels, as well as Mark's mother and Alvin's wife, Madilyn Samuels, were also in the vehicle and all allegedly sustained serious injuries and damages as a result of the accident.
The van owned by Mark and Patti Samuels was insured by State Farm Mutual Automobile Insurance Company with an automobile policy with liability limits of $100,000.00 per person and $300,000.00 per accident. This policy provided coverage to Alvin Samuels because he was a permissive operator of the vehicle. State Farm Mutual Automobile Insurance Company also issued an automobile policy to Alvin and Madilyn Samuels with liability limits of $250,000.00 per person and $500,000.00 per accident, which provided coverage to Alvin as the operator of the vehicle.
In addition to these two standard automobile policies, Alvin and Madilyn Samuels also carried two umbrella policies covering this accident. The first was "Personal Liability Umbrella Policy," No. 18-PO-0016-1 issued by State Farm Fire and Casualty Company ("State Farm"), with $2,000,000.00 limits of liability. The State Farm policy lists three "required underlying insurance policies:" (1) an automobile liability policy (250/500/100); (2) a personal residential policy with $100,000.00 limits of liability; and (3) a watercraft liability policy with $100,000.00 limits of liability. The policy further provides that "[t]his policy is excess over all other valid and collectible insurance." The yearly premium due on the State Farm policy was $1,385.00.
Evanston Insurance Company ("Evanston") also issued Alvin and Madilyn Samuels a "Personal Umbrella Liability Policy" with $2,000,000.00 limits of liability. The Evanston policy in effect at the time of the accident lists the following insurance policies as underlying policies: (1) "AUTO LIABILITY 250/500/100 STATE FARM INSURANCE S1048BACE0K;" and (2) "HOMEOWNERS LIABILITY 2,000,000 STATE FARM INSURANCE T8PO00161F." The yearly premium was $577.50. The Evanston policy provides that it will pay "[e]xcess insurance over and above the amounts provided for in *1238 basic policies" which it defines as those "policies listed on the declarations (including renewals or replacements) which provides liability coverage for Personal Injury or Property Damage because of accidents." In addition, the Evanston policy provides:
There may be other collectible insurance, other than basic policies, covering a claim which is also covered by this policy. If this occurs, the other insurance will pay first and this policy will be in excess of the other insurance.
After Mark Samuels filed suit against Alvin Samuels and all the above insurance companies, State Farm filed a Motion to Rank Insurance Policies, maintaining that the State Farm umbrella policy and the Evanston umbrella policy provided coverage on a pro-rata basis. Evanston opposed State Farm's motion and concurrently filed a Partial Motion for Summary Judgment contending that its policy is in excess of the State Farm umbrella policy. In support of its Partial Motion for Summary Judgment, Evanston presented: (1) the Evanston policy effective November 8, 1999 through November 8, 2000, which listed the underlying policies as: "AUTOMOBILE LIABILITY 250/500/100 STATE FARM S1048AACEDK" AND "HOMEOWNERS LIABILITY 2,000,000 STATE FARM 18-PO-0016-IF;" (2) the Evanston Policy effective November 8, 2000 through November 8, 2001, which incorrectly identified the State Farm Policy again as "HOMEOWNERS LIABILITY" but also incorrectly as "T8O00161F;" and (3) affidavits from three insurance agents involved in obtaining the umbrella policy from Evanston tending to show that the parties' intent was that the Evanston policy be in excess of the State Farm policy and that, but for a clerical error, the State Farm policy was mistakenly identified as a "homeowners liability" policy with the correct policy number on the original Evanston policy, and was identified as a "homeowners liability" policy with the incorrect number on the renewal policy.[1]
*1239 The trial court denied Evanston's motion and granted State Farm's motion, concluding that "State Farm Fire and Casualty Company policy and Evanston personal umbrella liability policy both contained excess `other insurance' clauses that are mutually repugnant and therefore mutually exclusive of each other requiring both insurance companies to share pro-rata on the limits of their policies."
The Fourth Circuit Court of Appeal reversed, finding that the Evanston policy should be reformed to reflect the true intent of the parties that the Evanston policy is an excess umbrella policy that provides coverage only in excess of the State Farm personal liability policy. Samuels v. State Farm Mut. Auto. Ins. Co., 03-2089 (La.App. 4 Cir. 7/13/05), 914 So.2d 560. We granted State Farm's writ application. Samuels v. State Farm Mut. Auto. Ins. Co., 06-0034 (La.4/24/06), 926 So.2d 528.

DISCUSSION
The issue before us is whether a clerical error by an insurer's agent in an insurance policy should be corrected to conform to the intent of the parties to the insurance policy. In this case, the evidence presented clearly indicates that Evanston and the Samuels intended for the Evanston policy to provide excess umbrella coverage over and above the State Farm umbrella policy. This intent is indicated by the affidavits presented and the fact that the premium paid by the Samuels was only $577.50 per year. It is also clear that Evanston's agent made a clerical error in identifying the underlying policy State Farm umbrella policy on the Evanston declaration page as a Homeowner's Policy on both the original 1999 policy and the 2000 renewal, and as No. "T8-PO-0016" instead of "18-PO-0016" on the 2000 renewal. Further, it is clear that, in issuing its umbrella policy, State Farm in no way mistakenly relied on the Evanston error in issuing its policy or assessing the risks under its policy. Finally, it is clear that no matter how we interpret these policies, the insured will have the same amount of excess coverage, $4,000,000.00, the only issue is which insurance company will benefit from our decision.[2] With those facts in mind, we look to the legal principles applicable to this case.
"The very nature of excess insurance coverage is such that a predetermined amount of underlying primary coverage must be paid before the excess coverage is activated." Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. *1240 Co., 93-0911 (La.1/14/94), 630 So.2d 759, 767. "The existence of the underlying primary coverage both reduces the risk assumed by the excess carrier and translates into a reduced premium to the insured." Id. "The reduced premium reflects the parties' intent that excess coverage attaches only after a predetermined amount of primary coverage has been exhausted." Id. at 767-68 (cites omitted).
"An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code." Louisiana Ins. Guar. Ass'n, supra at 763 (citing Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993); Central Louisiana Elec. Co., Inc. v. Westinghouse Elec. Corp., 579 So.2d 981, 985 (La.1991)). "The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent." Id. (Citing La. C.C. art.2045 (defining contractual interpretation as "the determination of the common intent of the parties")). "The parties' intent as reflected by the words in the policy determine the extent of coverage." Id. (Citing Trinity Industries, Inc. v. Insurance Co. of North America, 916 F.2d 267, 269 (5th Cir.1990) (citing Pareti v. Sentry Indem. Co., 536 So.2d 417 (La. 1988))).
"As other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties." William Shelby McKenzie and H. Alston Johnson, III, Louisiana Civil Law Treatise: Insurance Law and Practice, Vol. 15, § 5, p. 14 (2nd Ed.1996); Earl Williams Const. Co. v. Thornton & Brooks, Inc., 501 So.2d 1037, 1039 (La. App. 2 Cir.), writ denied, 504 So.2d 881 (La.1987). "In the absence of fraud, the party seeking reformation has the burden of proving a mutual error in the written policy." Id. "Parole evidence is admissible to show mutual error even though the express terms of the policy are not ambiguous." Id. In Ferguson v. Belcher and Son, 230 La. 422, 88 So.2d 806 (1956), this Court indicated that "the burden is on the one seeking the reformation to prove the error, and he must carry said burden by clear, and the strongest possible proof." Id. This requirement was modified in Bonadona v. Guccione, 362 So.2d 740 (La. 1978), which held that the clear and convincing evidence of mutual mistake was necessary only when a party sought to prove that the insurer had insured a substantially different and greater risk than that expressed by the written policy. Id. On the other hand, only the normal burden of proof by a preponderance of the evidence was required to reform a policy in a manner which did not substantially affect the risk assumed by the insurer. Id.
In this case, Evanston presented uncontroverted evidence that both the Samuels and Evanston intended the umbrella policy at issue to be in excess of the State Farm umbrella policy. The affidavits presented, as well as the amount of the yearly premium, clearly showed that the Evanston agent misidentified the underlying State Farm policy on the renewal policy, and misidentified it as a homeowner's policy on both the original policy and the renewal policy. However, the evidence also clearly shows that in spite of this clerical error, both Evanston and the Samuels believed the Evanston policy only provided umbrella coverage in excess of the State Farm umbrella policy. It is significant that State Farm in no way relied on this clerical error and mistakenly believed, in issuing its own umbrella policy, that the Evanston policy would provide pro rata coverage along with its policy. In fact, State Farm had to have known that there was no State Farm Homeowner's Policy with the number *1241 T8PO00161F. Further, contrary to the court of appeal's reasoning, interpreting the State Farm policy as an underlying umbrella policy will not result in more coverage available to the insured, the insured will have the same amount of umbrella coverage no matter if the Evanston policy is reformed because of mutual mistake or not.
State Farm argues that the language of the Evanston policy is clear and does not list the State Farm umbrella policy as an underlying policy; therefore, under Louisiana Ins. Guar. Ass'n, supra, this Court lacks the authority to change or alter its terms under the guise of interpretation. However, the plain fact remains that what the Evanston policy does list as an underlying policy, i.e., a State Farm homeowner's policy with $2,000,000.00 limits of liability, simply does not exist. Further, we are not interpreting an ambiguity in this policy, we are simply correcting a clerical error to reflect the parties' mutual intent.
State Farm also argues that under our holding in Tiner v. Aetna Life Insurance Co., 291 So.2d 774 (La.1974), an insurer is bound by the acts and knowledge of its agent in completing an insurance application, and that therefore, Evanston is bound by the clerical error of its agent. However, that principle is not applicable where both the insured and the insurer agree as to the correct terms and intent of the policy. Finally, contrary to the trial court's holding, Graves v. Traders and General Ins. Co., 252 La. 709, 214 So.2d 116 (1968) is not applicable either. In Graves, two insurance policies conflicted to such an extent that if both policies were given effect, neither insurer would be held liable. Graves stands only for the proposition that when two policies afford the same layer of coverage and both contain conflicting "other insurance" clauses which are irreconcilable, the policies must share liability on a pro rata basis. However, in this case, reforming the Evanston policy to reflect the mutual intent of the parties does not result in the Evanston and State Farm policies being mutually repugnant or lead to any absurdity. The policies simply provide different layers of coverage, with the Evanston policy being an excess umbrella policy over and above the State Farm umbrella policy.

CONCLUSION
In the case of mutual error, an insurance contract may be reformed to reflect the intent of the parties. Where, as here, the insurance agent has made a clerical error on the declarations page of an insurance policy as to the identity of certain underlying insurance policies, that clerical error will be corrected to reflect the clear intent of the parties. There are simply no rules of contractual interpretation that would lead us to ignore the clear intent of the parties to the fortuitous benefit of a third party insurance company who did not even rely on this error in issuing its own policy.

DECREE
For the reasons stated herein, the judgment of the court of appeal is affirmed.
AFFIRMED.
NOTES
[1] Evanston presented the affidavits of Stephen Geary (Alvin Samuel's insurance agent), Arvella Campbell (Alvin Samuel's renewal agent), and Sharesse Killebrew (Evanston's agent). The affidavit of Ms. Killebrew stated as follows:

. . .
2. That in September of 1999, she was contacted by Stephen Geary of Huntleigh-McGee who inquired about obtaining a $2,000,000 excess umbrella protection for Alvin and Madilyn Samuels in excess of a $2,000,000 State Farm Fire & Casualty Insurance Company (State Farm) umbrella policy issued to Alvin and Madilyn Samuels;
3. That on September 8, 1999, Stephen Geary forwarded to her the renewal certificate to the State Farm Umbrella Policy issued to Alvin and Madilyn Samuels numbered 18-PO-0016-1F demonstrating that the State Farm umbrella was in effect;
3. [sic] That as general agent for Evanston she forwarded an Evanston umbrella application to Stephen Geary to be completed and properly executed by Alvin Samuels and Stephen Geary.
4. That on October 7, 1999 she received the completed original umbrella application executed by Stephen Geary and Alvin Samuels, which specifically listed the $200,000 State Farm umbrella policy numbered 18-PO-0016-1F as a "basic umbrella underlying policy.;
5. That as general agent for Evanston, she issued the Evanston excess umbrella policy and declaration page on November 30,-1999, with effective dates of November 8, 1999 through November 8, 2000, to Alvin and Madilyn Samuels, for a premium of $577.50 specifically listing the $2,000,000 State Farm umbrella policy numbered 18-PO-0016-1F as a underlying limit. While the declaration page incorrectly lists the $2,000,000 State Farm umbrella policy numbered 18-PO-0016-1F as a homeowner's liability, this was a clerical error and the intent of Evanston was to list the $2,000,000 State Farm umbrella policy numbered 18-PO-0016-1F as an "other Liability" on the Evanston declaration page;
6. That as general agent of Evanston, her intent was to issue to Alvin and Madilyn Samuels a $2,000,000 Evanston Insurance Company umbrella policy to be excess of Alvin and Madilyn Samuel's $2,000,000 State Farm umbrella policy numbered 18-PO-0016-1F;
7. That as general agent for Evanston, she renewed the Evanston excess umbrella policy on December 4, 2000 again for a premium of $577.50 by listing an Insurance Declaration effective from November 8, 2000 to November 8, 2001, listing the $2,000,000 State Farm umbrella policy as an underlying limit.
8. That while the Insurance Declaration effective November 8, 2000 to November 8, 2001 lists the $2,000,000 State Farm umbrella policy as T8-PO-0016-1F, when it should have been listed as 18-PO-0016-1F, this was a clerical error as the intent of Evanston was to list the State Farm umbrella policy numbered 18-PO-0016-1F as an underlying limit.
9. That at all times it was the intent of Evanston for its $2,000,000 excess umbrella policy to be excess of the $2,000,000 State Farm umbrella policy.
[2] At oral argument before this Court, both State Farm and Evanston made judicial admissions that their umbrella policies provide the insured with $4,000,000.00 of coverage and the insured will be entitled to this amount whether we rule that State Farm and Evanston are liable for this amount pro rata or that the Evanston policy is an excess umbrella policy which only affords coverage in excess of the State Farm umbrella policy.