IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 21, 2009

Charles R. Fulbruge III
Clerk

No. 07-31061

AMERICAN ELECTRIC POWER COMPANY INC; AMERICAN ELECTRIC
POWER SERVICE CORP; CENTRAL AND SOUTHWEST CORPORATION

Plaintiffs-Appellants

v.

AFFILIATED FM INSURANCE COMPANY

Defendant-Appellee

Appeal from the United States District Court
for the Middle District of Louisiana

Before GARWOOD, GARZA, and OWEN, Circuit Judges.

EMILIO M. GARZA:

In this insurance-coverage dispute, plaintiff American Electric Power
Company and its subsidiaries (collectively, "AEP") appeal from the district
court's grant of summary judgment in favor of defendant-insurer Affiliated FM
Insurance Company ("Affiliated"). For the following reasons, we affirm the
district court's order.

I

This is an insurance dispute between public-utilities conglomerate AEP
and its insurer Affiliated. In 2000, Affiliated issued a policy covering AEP and
its subsidiaries from loss due to employee theft or misconduct (the "Affiliated

Policy"). Later that year, AEP acquired another utilities conglomerate, Central & Southwest Corporation ("CSW"). The Affiliated Policy was amended to include CSW and its subsidiaries as covered subsidiaries of AEP. Subsequently, AEP discovered losses that occurred in 1999 due to employee theft at two of CSW's subsidiary limited liability companies ("LLCs"). AEP claimed that these losses were covered under the Affiliated Policy's "prior loss" clause, which provided coverage for earlier losses if those losses would have been covered under an insurance policy in existence at the time. At the time of the theft, CSW was covered by an insurance policy with Chubb Insurance Group (the "Chubb Policy"). Thus, for purposes of this appeal, the parties agree that the Affiliated Policy covers the losses in 1999 if the Chubb Policy would have extended coverage at that time. After receiving AEP's claim, Affiliated determined that the 1999 thefts would not have been covered under the Chubb Policy, and thus denied AEP coverage under the Affiliated Policy's prior loss clause. AEP disagreed and filed suit in federal court.

After discovery, Affiliated moved for summary judgment. The Chubb Policy expressly covered CSW "and any subsidiary corporation now existing or hereafter created or acquired." (emphasis added). According to Affiliated, this language limited coverage to true corporations and excluded other subsidiary entities like the two LLCs at issue in the 1999 thefts. AEP responded that the term "corporation" was ambiguous and filed affidavits from both CSW and Chubb stating that LLCs were intended to be covered under the general heading of "corporation" in the Chubb Policy. Affiliated moved to strike the affidavits, alleging that they constituted impermissible parol evidence and raising several other evidentiary challenges. The district court determined that the term "corporation" was unambiguous and did not include LLCs. Thus, the court granted summary judgment and struck the affidavits as impermissible parol evidence.

AEP subsequently filed a Rule 59(e) motion for rehearing, claiming inter alia that the district court should reform the Chubb Policy to match the original intent of CSW and Chubb to include LLCs. The district court declined to reform the Chubb Policy and entered a final order granting summary judgment. AEP now appeals this final order, claiming that the district court erred in (1) finding the policy unambiguous and (2) declining to reform the policy.

## II

### A

AEP first contends that the district court erred in finding the term "corporation" to be unambiguous and thereby excluding AEP's affidavits containing relevant parol evidence.[1] "We review de novo the court's grant of summary judgment. We also review de novo the interpretation of a contract, including the question of whether the contract is ambiguous." Advocare Intern. LP v. Horizon Labs., Inc., 524 F.3d 679, 685 (5th Cir. 2008) (internal quotation marks omitted).

---

[1] The district court did not resolve Affiliated's other evidentiary challenges to the affidavits. Accordingly, we address only their exclusion as impermissible parol evidence to an unambiguous contract.

Under Louisiana law,[2] "[i]nterpretation of a contract is the determination of the common intent of the parties." LA. CIV. CODE ANN. art. 2045. This involves a two-step process: The court must first look to the plain text of the contract to determine whether its meaning is clear and unambiguous. See LA. CIV. CODE ANN. art. 2047 ("The words of a contract must be given their generally prevailing meaning."). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE ANN. art. 2046; see also Abshire v. Vermilion Parish Sch. Bd., 848 So. 2d. 552, 555 n.5 (La. 2003) ("[E]xtrinsic evidence is inadmissible either to explain or to contradict [an] instrument's [clear] terms"). However, if the plain text is subject to two or more reasonable interpretations, then the court may look to parol evidence to determine the parties' intent. Campbell v. Melton, 817 So. 2d 69, 75 (La. 2002). Furthermore, the court should generally construe an ambiguous insurance policy in favor of the insured. Cadwallader v. Allstate Ins. Co., 848 So. 2d 577, 580 (La. 2003).

AEP contends that the district court erred in finding the policy unambiguous. According to AEP, the term "subsidiary corporation" can be reasonably interpreted to include LLCs. AEP argues that the common understanding of "corporation" extends beyond its legal definition and includes unincorporated entities like LLCs. For support, AEP points to numerous judicial

---

[2] This action was filed in the Middle District of Louisiana pursuant to federal diversity jurisdiction. See 28 U.S.C. § 1332. Accordingly, we are bound to apply the substantive law, including the conflict-of-law rules, of the forum state Louisiana. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract. Woodfield v. Bowman, 193 F.3d 354, 360 (5th Cir. 1999). Here, the Chubb Policy was issued and delivered in Texas. However, neither party has identified a conflict between the relevant law of Texas and Louisiana. When there is no conflict, no conflict-of-law analysis is necessary, and the forum law applies. Mumblow v. Monroe Broadcasting, Inc., 401 F.3d 616, 620 (5th Cir. 2005). Thus, we apply the forum law of Louisiana in this appeal. However, we note that the outcome would remain the same under an application of Texas law.

and legal references to LLCs as "limited liability corporations." In addition, AEP argues that the term must be construed in light of the overarching policy. AEP contends that interpreting the Chubb Policy to exclude LLCs would create an "absurd consequence—an inexplicable gap in insurance coverage" among CSW's subsidiary entities.[3]

We find that the district court did not err in finding the Chubb Policy unambiguous and excluding parol evidence. The generally prevailing meaning of the term "corporation" does not include LLCs. See LA. CIV. CODE ANN. art. 2047 ("The words of a contract must be given their generally prevailing meaning."). LLCs are statutory creatures defined in part by their contrast to corporate entities. See Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079–80 (5th Cir. 2008) (holding that an LLC must be treated as an unincorporated association—and not as a corporation—for purposes of diversity jurisdiction). The LLCs at issue here were created in Oklahoma, and Oklahoma law defines an LLC as "an unincorporated association or proprietorship." OKLA. STAT. ANN. tit. 18, § 2001(11). The relevant Louisiana statute tellingly provides that "[n]o limited liability company organized under this Chapter shall be deemed, described as, or referred to as an incorporated entity, corporation, body corporate, [etc.]." LA. REV. STAT. ANN. § 12:1301(A)(10). The instances AEP cites in which courts refer to LLCs as "limited liability corporations" are merely imprecise and are clearly not intended to redefine the LLC. These imprecise references do not alter the fundamental distinction between the two types of entities. AEP has identified no case in which the term "corporation" was defined broadly enough to include LLCs. Moreover, interpreting the term "corporation" to exclude unincorporated entities does not lead to an "absurd consequence" in

---

[3] AEP raises numerous other arguments relating to parol evidence of the parties intent to include LLCs. However, parol evidence cannot be used to create an ambiguity in an otherwise unambiguous contract. See Abshire, 848 So.2d. at 555 n.5.

this case—there is nothing inherently absurd about an insurance policy that covers a particular type of subsidiary and excludes others.

In sum, the term "corporation" is "clear and explicit and lead[s] to no absurd consequences" in the context of the Chubb Policy. See LA. CIV. CODE ANN. art. 2046. Accordingly, the district court did not err in finding the policy unambiguous and excluding parol evidence of the parties' intent.

B

AEP next contends that the district court erred in refusing to reform the Chubb Policy to include LLCs. AEP raised this reformation argument for the first time in its Rule 59(e) motion for reconsideration. Because the district court considered the merits of the Rule 59(e) motion and still granted summary judgment, we review the reformation issue under the familiar summary-judgment standard of de novo. See Templet v. HydroChem Inc., 367 F.3d 473, 477 (5th Cir. 2004) (discussing review of a Rule 59(e) motion); GeoSouthern Energy Corp. v. Chesapeake Operating Inc., 274 F.3d 1017, 1020 (5th Cir. 2001) (discussing review of a reformation ruling).

Reformation is "an equitable remedy used to correct errors or mistakes" in contracts. See WMC Mortg. Corp. v. Weatherly, 963 So. 2d 413, 416 (La. Ct. App. 2007). An insurance policy "may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties." Samuels v. State Farm Mut., 939 So. 2d. 1235, 1240 (La. 2006). The party seeking reformation has the burden to establish a mutual error in the creation of a contract.[4] Id. Parole evidence is admissible to establish such a mutual

---

[4] When a party seeks to reform a policy so as to provide coverage for a "substantially different and greater risk" than expressly covered, the party must demonstrate a mutual error by clear-and-convincing evidence. Samuels, 939 So. 2d. at 1240. While this higher standard likely applies to AEP's burden in this case, we note that the outcome would be the same even under the usual preponderance standard.

error, but not to create ambiguity in the meaning of an intended term. Compare id. with Abshire, 848 So. 2d. at 555 n.5. Furthermore, even in the event of a mutual error, reformation may be inappropriate if the rights of third parties are affected. See Washington v. Savoie, 634 So.2d 1176, 1180 (La. 1994) (refusing to reform a clerical mistake because reformation would limit the recovery of third-party tort victims); Lewis v. Saucer, 653 So. 2d. 1254, 1259 (La. Ct. App. 1995) (noting that an "instrument may not be reformed or corrected to the prejudice of third parties who are authorized to rely on the integrity of the instrument").

Here, the district court refused to reform the Chubb Policy because Affiliated—who was not a party to the original agreement—had no knowledge of any error in the Chubb Policy when it later assumed liability through the Affiliated Policy. On appeal, AEP contends that reformation is nevertheless appropriate and argues that the Samuels decision controls the instant case. In Samuels, the Louisiana Supreme Court reformed a clerical error in an insurance contract even though reformation worked to the detriment of a third party. Samuels, 939 So. 2d. at 1240–41. There, a homeowner purchased a general umbrella policy with State Farm and a separate policy for additional coverage (in excess of the underlying State Farm policy) with Evanston. Id. at 1239. However, an Evanston employee entered the wrong identifying number for the underlying State Farm policy in the text of the Evanston policy. Id. As a result, State Farm argued that Evanston was equally responsible for the underlying loss of the homeowner. Id. Rather than allow State Farm to receive this unintended windfall, the Louisiana court reformed the clerical error in the Evanston policy, leading to a determination of full underlying liability against State Farm. Id. at 1241. AEP argues that Samuels stands for the proposition that reformation to correct mutual errors is proper even if such reformation prejudices a third party.

We find that the district court did not err in refusing to reform the Chubb Policy. This case is distinguishable from Samuels on two dispositive grounds. First, Samuels involved a third party who did not assume or rely on the original contract in any manner. 939 So. 2d. at 1240–41 ("It is significant that State Farm in no way relied on this clerical error . . . . In fact, State Farm had to have known that there was no [insurance policy] with the [mistaken number]." Here, Affiliated assumed the coverage obligations set forth under the unambiguous terms of the Chubb Policy. There is no indication that Affiliated knew or should have known of an informal understanding between Chubb and CSW regarding the meaning of "corporation." AEP has identified no case in which a third party has assumed the obligations of a contract and a court has subsequently reformed the contract's unambiguous terms. Such a result would be contrary to basic norms of fairness and notice. See Lewis, 653 So. 2d. at 1259.

Second, the use of the term "corporation" is not the type of "error" that reformation is intended to remedy. Samuels involved an obvious clerical mistake that lead to the inclusion of an unintended and inaccurate policy number. See Samuels, 939 So. 2d. at 1241 ("[W]e are not interpreting an ambiguity in this policy, we are simply correcting a clerical error to reflect the parties' mutual intent."). Here, there is no allegation that Chubb and CSW made a clerical error in using the word "corporation." Rather, AEP argues that the original parties had a broader-than-usual meaning in mind when they purposefully included the word. In effect, AEP attempts to make an end-run around the parol-evidence rule by framing its argument as a request for reformation. We will not sanction such a strategy. See Abshire, 848 So.2d. at 555 n.5 ("[E]xtrinsic evidence is inadmissible either to explain or to contradict [an] instrument's [clear] terms").

In sum, we find that there is a significant difference between an obvious clerical error and the alleged "hidden meaning" in a contract assumed by an

unwitting third party.  Equity may counsel relief for the former, but it does not for the latter.  Accordingly, the district court correctly declined to reform the unambiguous text of the Chubb Policy.

III

For the foregoing reasons, the district court's order granting summary judgment is AFFIRMED.