CHUTZ, J.
Plaintiffs-appellants, Ricky and Danielle Bosse, appeal the trial court's judgment, granting motions for summary judgment in favor of defendants-appellees, Access Home Insurance Company (Access) and Maison Insurance Company (Maison), and dismissing the Bosses' claims for (1) declaratory relief, seeking a declaration that the insurers' respective property insurance policies afforded the Bosses the right to full replacement cost value (RCV) of property damaged by hail in a thunderstorm; (2) damages against the insurers for breach of the insurance contracts; and (3) penalties under the Louisiana Insurance Code.[1] The trial court's judgment also denied a cross-motion for summary judgment filed by the Bosses, claiming entitlement to declaratory relief, damages, and penalties.[2] We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
The following is undisputed. On April 25, 2015, hail from a thunderstorm caused roof damage to two homes in Mandeville that the Bosses owned. On January 11, 2017, the Bosses reported a claim to Access for the roof damage to the home located at 1307 Girod Street. Access sent an adjuster to inspect the damage. After concluding the roof and other portions of the home had been damaged due to the April 25, 2015 storm, the adjuster determined that the RCV for the damage was $5,677.03. The adjuster valued the depreciation of the damaged areas at $2,277.28 and, subtracting *1145 the amount of depreciation from the RCV, determined the actual cash value (ACV) for the Girod Street home was $3,399.75. After subtraction of the policy's $1,000.00 deductible, Access sent a check to the Bosses in the amount of $2,399.75 as payment for the claim.
As with the Girod Street home, on January 11, 2017, the Bosses reported a claim to Maison for roof damage sustained as a result of hail from the April 25, 2015 thunderstorm to the home located at 1200 Albert Street. Maison sent an adjuster to the Albert Street home who, after concluding the roof of the home had been damaged due to the April 25, 2015 storm, estimated that the RCV for the damage was $11,899.26. The adjuster valued the depreciation of the damaged area at $3,270.51 and, subtracting the amount of depreciation from the RCV, determined the ACV for the Albert Street home was $8,628.75. After subtraction of the policy's $1,000.00 deductible, Maison sent a check to the Bosses in the amount of $7,628.75 as payment for the claim.
The Bosses subsequently requested the full amount of the RCV from both Access and Maison. After each insurer denied the request, the Bosses filed this lawsuit, on April 21, 2017, seeking declaratory relief as well as damages and penalties against the insurers. The Bosses reasoned that under the terms of each insurer's policy, they were entitled to the full amount of the RCV; by failing to tender the full amount of the RCV and paying only the ACV, the insurers breached their respective insurance contracts; and, thus, that each insurer owed penalties under the Louisiana Insurance Code.
After answering the petition, each insurer filed a motion for summary judgment, seeking dismissal of the Bosses' claims. Access and Maison both asserted that under the unambiguous terms of their respective policies, the payment of the ACV satisfied their obligations. The Bosses filed a cross-motion for summary judgment, seeking judgment in their favor.
A hearing was held, after which the trial court granted the motions for summary judgment filed by Access and Maison. A judgment in conformity with the trial court's ruling and dismissing the Bosses' claims was signed on January 23, 2018. The Bosses have devolutively appealed.
DISCUSSION
Appellate courts review the granting or denial of a motion for summary judgment de novo under the same criteria governing the district court's determination of whether summary judgment is appropriate. Schultz v. Guoth , 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1005-06. A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, written stipulations, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3) & (4).
Summary judgment is appropriate for determining issues relating to insurance coverage. In determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy's terms. Miller v. Superior Shipyard and Fabrication, Inc. , 2001-2683 (La. App. 1st Cir. 11/8/02), 836 So.2d 200, 203.
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting *1146 insurance contracts is to determine the parties' common intent. See La. C.C. art. 2045. The parties' intent as reflected by the words in the policy determines the extent of coverage. Samuels v. State Farm Mut. Auto. Ins. Co. , 2006-0034 (La. 10/17/06), 939 So.2d 1235, 1240. In ascertaining the common intent, words and phrases in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning, in which case the words must be ascribed their technical meaning. See La. C.C. art. 2047 ; Sims v. Mulhearn Funeral Home, Inc. , 2007-0054 (La. 5/22/07), 956 So.2d 583, 589. If the wording of the policy clearly and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. See La. C.C. art. 2046 ; Edwards v. Daugherty , 2003-2103 (La. 10/1/04), 883 So.2d 932, 941.
An insurance contract is construed as a whole, and each provision in the contract must be interpreted in light of the other provisions. One provision of the contract should not be construed separately at the expense of disregarding other provisions. See La. C.C. art. 2050 ; Sims , 956 So.2d at 589. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions on the obligations they contractually assume. Marcus v. Hanover Ins. Co., Inc. , 98-2040 (La. 6/4/99), 740 So.2d 603, 606.
Replacement cost insurance, such as that which the Bosses secured to insure their two Mandeville homes, allows recovery for the actual value of property at the time of loss, without deduction for deterioration, obsolescence, and similar depreciation of the property's value. Thus, replacement cost insurance is designed to cover the difference between what property is actually worth and what it would cost to rebuild or repair that property. 12A Couch on Ins. § 176:56.
The most important limitation on replacement cost coverage is that the insurer has limited its liability to instances where the insured completes repairs or replacement. Without actual repair or replacement, the insurer intended no liability beyond the ACV of the loss. Thus, when actual repair or replacement is required, the insurer has no liability beyond the ACV loss until repair or replacement is accomplished. See Jordan, What Price Rebuilding? , A look at replacement cost policies, 19 Fall Brief 17, 21 (Fall 1990). The typical replacement provisions contain no language as to when an insured must complete repair or replacement of the damaged property. The standard provision does, however, require the insured to make a claim within a certain number of days, usually 180, in order to recover for replacement cost coverage. Id. , at 38.
With these precepts in mind, we turn to the provisions of each insurer's policy.[3] According to the pertinent terms of the Access policy:
5. Loss Settlement . Covered property losses are settled as follows:
....
b. Buildings under Coverage A [Dwelling] or B [Other Structures] at replacement cost without deduction for depreciation, subject to the following:
(1) If at the time of loss, the amount of insurance in this policy on the damaged building is 80% or *1147 more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:
(a) the limit of liability under this policy that applies to the building;
(b) the replacement cost of that part of the building damaged for like construction and use on the same premises; or
(c) the necessary amount actually spent to repair or replace the damaged building.
....
(4) We will pay no more than the [ACV] of the damage unless:
(a) actual repair or replacement is complete ....
(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an [ACV] basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.
The relevant Maison policy provisions state the following:
E. Loss Settlement
... Covered property losses are settled as follows:
2. Buildings and Coverage A [Dwelling] or B [Other Structures] at replacement cost without deduction for depreciation, subject to the following:
a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:
(1) The limit of liability under this policy that applies to the building;
(2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or
(3) The necessary amount actually spent to repair or replace the damaged building.
....
d. We will pay no more than the [ACV] of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a ... above....
e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an [ACV] basis. You may then make claim for any additional liability according to the provisions of this Condition E. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.
Acknowledging that they did not repair or replace the damage to the roofs of their homes within 180 days before they made their claims, the Bosses urge that under the plain language of the policies, see Access policy, Condition 5.b(1) and Maison policy, Condition E.2.a, they are entitled to receive a single payment of up to full RCV contingent upon completing the repairs or replacement without regard to any time limitation. We disagree.
Under the Access policy, Condition 5.b.(5), and the Maison policy, Condition E.2.e, an insured may make a claim and receive the ACV of the damaged property immediately after the damage occurs. See *1148 Young v. Imperial Fire & Cas. Ins. Co. , 2014 WL 3662587, *8, quoting Stevens v. Allstate Ins. Co. , 19 F.Supp.3d 690, 695-96 (E.D. La. 2014). The plain language of these provisions clearly allows the insured to make the ACV election without any input or approval from the insurer. Young , 2014 WL 3662587, at *9.
If the insured does not intend to repair or replace the damaged property, the insurer's liability will have been entirely resolved. If the insured does intend to repair or replace the damaged property, unlike the decision to make the ACV election, the plain language of Access policy, Condition 5.b.(4) and Maison policy, Condition E.2.d requires that the insured notify the insurer of his or her intent to repair or replace the property within 180 days after the damage occurs. Thereafter, the insured may make another claim for the difference between the ACV and the repair or replacement cost as set forth in Condition 5.b.(1) of the Access policy and Condition E.2.a of the Maison policy. Young , 2014 WL 3662587, at *8.
It is undisputed that the Bosses failed to notify either Access or Maison within 180 days of the loss of their intent to repair or replace the damaged property and make another claim for any additional liability arising out of any RCV. Thus, under the terms of the Access policy, having failed to timely notify the insurer of their intent to repair or replace the damaged property (see Condition 5.b.(5) ), the RCV coverage set forth in Condition 5.b.(1) was no longer available to them. Likewise, under the terms of the Maison policy (see Condition E.2.e), because the Bosses failed to notify the insurer of their intent to repair or replace within 180 days of the April 25, 2015 loss, the RCV coverage under Condition E.2.a was no longer available to them.
Accordingly, under the plain language of the policies, the RCV was no longer available to the Bosses by the date that they filed their claims.[4] As such, there is no basis to support the Bosses' demand for a declaration that the insurers' respective property insurance policies afforded them the right to claim the full amount of the RCV. Likewise, under the unambiguous terms of the policy, the Bosses failed to establish that the insurers breached the insurance contract and, therefore, cannot show that they are entitled to penalties under the Louisiana Insurance Code. Therefore, the trial court correctly dismissed their claims on summary judgment.
DECREE
For these reasons, the trial court's judgment is affirmed. Appeal costs are assessed against plaintiffs-appellants, Ricky and Danielle Bosse.
AFFIRMED.
Welch J. concurs in result

See La. R.S. 22:1 (specifying that the provisions of Title 22 may be cited as the Louisiana Insurance Code). See also La. R.S. 22:1892 (providing for an award of penalties for an insurer's failure to timely pay a claim) and La. R.S. 22:1973 (allowing for an award of penalties against an insurer for breach of its duty to its insured of good faith and fair dealing).

The Bosses instituted this litigation as a class action petition for damages, averring that numerous others, similarly situated, were also owed damages from Access and Maison. The trial court signed an order directing a minute entry setting forth that the parties consented to dispose of the cross-motions for summary judgment prior to addressing whether the plaintiffs were entitled to class certification. On appeal, the parties have raised no issues relative to either class certification or the disposition of the cross-motions for summary judgment before a class certification determination has been made.

Because it is undisputed that the amount of insurance on each home at the time of the loss was greater than 80% of the full replacement cost of the home, we cite only those provisions of each insurer's policy that are relevant to our discussion.

Because the Bosses failed to timely assert a claim for any RCV they may have had, the transmittal letters sent by Access and Maison, denying the Bosses' requests for payment of full RCV, accurately represented the facts and the policy provisions. Thus, the Bosses' claim of an anticipatory breach of contract by the insurers is without foundation.