# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2021

Lyle W. Cayce
Clerk

No. 20-30451

Melvin Jackson, *doing business as* MLJ Trucking, L.L.C.; Janet Jackson, *doing business as* MLJ Trucking, L.L.C.,

*Plaintiffs—Appellees*,

*versus*

Berkshire Hathaway Homestate Insurance Company,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:18-CV-1146

Before Jones, Clement, and Graves, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:*

Plaintiffs-Appellees Melvin and Janet Jackson sued Defendant-Appellant Berkshire Hathaway Homestate Insurance Company for its failure to pay their policy claim following an accident involving their truck. After a bench trial, the district court awarded $19,876.42 in statutory penalties,

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

$6,625.47 in attorney's fees, and $1,665.61 in costs, ruling that Berkshire failed to timely pay the claim in violation of Louisiana law. Berkshire appeals the judgment. We AFFIRM.

## I. Background

Melvin and Janet Jackson own a small trucking company, MLJ Trucking, LLC, which operated two Peterbilt trucks that it leased from Brenton Turnipseed. MLJ sought to obtain insurance for the 2014 Peterbilt truck through Pace Insurance Managers. Through Pace, MLJ obtained insurance for the truck with Berkshire Hathaway Homestate Insurance Company. Specifically, the truck was added to an existing Berkshire insurance policy, bearing Policy No. 02TRM01928001, on January 13, 2017, through the submission of a General Change Endorsement Form.

On July 31, 2017, the truck was involved in an accident. MLJ reported the accident to Berkshire, which assigned the claim to CJ Hester Inc. On August 7, 2017, CJ Hester inspected the truck and issued an appraisal report estimating the damages to be $40,752.84 (less a $1,000 deductible).

During the initial evaluation of the claim, Berkshire discovered a discrepancy between the VIN of the truck and the VIN on the policy. The damaged truck contained VIN 1XPXDP0X9ED233253 ("253 truck"), but the policy listed VIN 1XPXDP0X5ED233251 ("251 truck"). This discrepancy led to a delay in Berkshire determining whether the damaged truck was covered under the policy.

Berkshire claims notes show that on August 16, 2017, a Berkshire employee had a long phone conversation with Pace employees and Turnipseed, during which Turnipseed confirmed that there was an error in the paperwork—he traded in the 251 truck to a dealership in Shreveport, Louisiana, and leased the 253 truck to MLJ. Turnipseed said he had to go to the DMV and sort everything out. Pace informed Berkshire that it was

No. 20-30451

"sending an endorsement right now to correct the VIN." On that same day, Pace sent a Commercial Policy Change Request with the corrected VIN ending in 253, as well as a revised Automobile Loss Notice listing the "loss payee" as "GE TF Trust."

On August 17, 2017, Tamara Colley from Pace notified Berkshire that the VIN mix-up was corrected with the DMV. Attached to the email was a vehicle invoice dated December 27, 2016, listing the vehicle as the 251 truck; the seller as BMO Harris Bank NA; and the buyer as Peterbilt Truck Center of Shreveport, LLC. The invoice showed that the 251 truck was purchased by the Shreveport dealership in late December 2016.

Robbie Thielen from Berkshire, however, replied that according to the Department of Transportation (DOT) records, a truck with a VIN ending in 251 had been inspected twice on January 11th and March 14th. Berkshire maintained that it would not be amending the VIN on the policy to match the truck involved in the claim. Colley emailed back, stating that Turnipseed explained to her that when the DOT inspected the truck, the officer only checked the registration papers and did not compare the VIN on the registration papers to the VIN on the truck door. She also noted that the 251 truck had a blown-up motor, so it was not in running condition in January 2017, and that it was later sold to Womack & Sons.

On September 1, 2017, Colley sent an email with shop records confirming that the 251 truck was in the shop from November 2016 to February 2017. On September 8, 2017, Berkshire prepared a Policy Application Review (PAR), which could trigger additional investigation and in-person discussions of the claim. On September 12, 2017, the claim was referred for further review because the damaged vehicle "was not scheduled on the policy."

No. 20-30451

On September 22, 2017, Colley emailed Thielen a letter from the Peterbilt dealership, which averred that it took possession of the 251 truck from AJ Turnipseed Trucking/BMO Harris Bank on December 27, 2016, and had it until April 28, 2017, when it was sold to Womack & Sons. Colley stated: "I absolutely do not know what else I can provide to you for proof that the dealership had the vehicle #251 and the insured had vehicle #253."

Berkshire claims notes show that on October 24, 2017, a Berkshire employee advised MLJ that it "agreed to pay the claim on a disputed basis." On November 2, 2017, the title to the truck was requested, and Mrs. Jackson subsequently provided a copy. Berkshire issued the full payment to MLJ on November 28, 2017.

The Jacksons sued Berkshire for the delay in payment. The case was tried before a magistrate judge. Following trial and post-trial briefing, the district court issued a memorandum ruling and final judgment, concluding that (1) the insurance policy must be deemed reformed to reflect that the damaged truck is covered by the policy due to the mutual mistake between MLJ and Pace, who acted as Berkshire's agent; and (2) Berkshire violated Louisiana law by failing to pay the claim within thirty days after receipt of satisfactory proof of loss. Accordingly, Berkshire was ordered to pay MLJ $19,876.42 in statutory penalties. The district court also granted MLJ's motion for attorney's fees, awarding $6,625.47 in attorney's fees and $1,665.61 in costs. Berkshire timely appeals.

## II. Legal Standard

After a bench trial, findings of fact are reviewed for clear error and legal issues are reviewed de novo. *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020).

## III. Legal Analysis

No. 20-30451

Berkshire disputes the district court's conclusion that the policy should be deemed reformed to reflect the correct VIN of the truck, as well as the award of statutory penalties for the delayed payment. We address each issue in turn.

## A. Reformation

"Louisiana law clearly allows contract reformation," which is "an equitable remedy designed to correct an error in the contract." *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 748 (5th Cir. 2011). "An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Id.* (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)). "As with other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties." *Id.* (citing *Samuels v. State Farm Mut. Ins. Co.*, 939 So.2d 1235, 1240 (La. 2006)). "Parole [sic] evidence is admissible to show mutual error even though the express terms of the policy are not ambiguous." *Id.* (quoting *Samuels*, 939 So.2d at 1240). The party seeking reformation has the burden of proving mutual error by clear and convincing evidence, but it need only satisfy a preponderance of the evidence "to reform a policy in a manner which did not substantially affect the risk assumed by the insurer." *Samuels*, 939 So.2d at 1240.

We look to the Louisiana Supreme Court's decision in *Samuels* for guidance on post-accident contract reformation arising from a mutual mistake involving a clerical error. *Samuels* arose out of an accident in which the victim had purchased a State Farm general umbrella policy and an Evanston excess policy that would not be activated until State Farm paid its limits. 939 So.2d at 1237. However, the Evanston agent misidentified the State Farm umbrella policy on the declarations page, calling it a

"homeowner's policy" and providing an incorrect policy number. *Id.* at 1238. Thus, a plain reading of the Evanston policy would require State Farm and Evanston to pay the excess on a pro-rata basis, contrary to the intent of the insured and Evanston. *Id.*

The Louisiana Supreme Court reformed the clerical error in the insurance contract, finding that Evanston met its burden of proving that the parties clearly intended the Evanston policy to be subordinate to the State Farm policy. *Id.* at 1240. As to the affected third party, the court reasoned that State Farm was not prejudiced by reformation because it "in no way relied on this clerical error," nor did it issue its policy under the mistaken presumption that Evanston would provide pro-rata coverage. *Id.* In other words, the court refused to "ignore the clear intent of the parties to the fortuitous benefit of a third party insurance company who did not even rely on this error in issuing its own policy." *Id.* at 1241.

We need not address the agency relationship between Berkshire and Pace, or the parties' other arguments, because we conclude that the insurance policy should be deemed reformed to reflect the intent of the parties; that is, MLJ and Berkshire. The trial evidence shows that Mrs. Jackson sought to obtain insurance coverage for a 2014 Peterbilt truck, which MLJ had leased from Turnipseed; that during the process of obtaining insurance with Berkshire through Pace, she thought the truck in her possession "had the VIN 251"; that she was actually in possession of the 253 truck and never had possession of the 251 truck; and that she learned of the truck's actual VIN only after the accident occurred. Further, Berkshire accepted the General Change Endorsement form submitted by MLJ, which added a 2014 Peterbilt truck to the existing policy effective January 13, 2017, and the form appears to have been electronically processed by Berkshire on

January 26, 2017.[1] No evidence suggests that Berkshire "relied on this clerical error" in issuing the policy or that the mistake affected the risk Berkshire assumed in insuring the truck. *Id.* at 1240.

Thus, the record clearly establishes that, through the procurement of the policy, the parties contemplated and agreed to insuring the 2014 Peterbilt truck in MLJ's possession, which bore the 253 VIN. It would not be equitable to allow a mere scrivener's error to defeat the actual agreement of the parties; otherwise, Berkshire would receive an unintended windfall. Like the clerical error in *Samuels*, the mix-up over the truck's VIN was a mutual mistake that warrants contract reformation.

## B. Statutory Penalties

Next, we address whether the district court erred in awarding statutory penalties, attorney's fees, and costs under Louisiana Revised Statute 22:1892. Section 1892 provides that insurers "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured or any party in interest." LA. STAT. ANN. § 22:1892(A)(1). When insurers fail to do so and "such failure is found to be arbitrary, capricious, or without probable cause," insurers are subject "to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due . . . as well as reasonable attorney fees and costs." *Id.* § 22:1892(B)(1). "The bad faith statute[] [is] penal in nature and should be strictly construed." *Feingerts v. La. Citizens Prop. Ins. Corp.*, 265 So.3d 62, 66 (La. Ct. App. 2019). To prevail under section 1892, "a claimant must establish (1) that the insurer received satisfactory proof of loss; (2) failed to pay the claim within the applicable statutory period, or failed to make a

---

[1] The form contains superimposed notes of "EBOOKED BY slkeith 1/26/2017" and "Processed NCChristensen 1/26/2017" near the signature boxes.

written offer to settle the claim, and (3) that the failure to timely tender a reasonable amount was arbitrary, capricious, or without probable cause." *Bourg v. Safeway Ins. Co. of La.*, 300 So.3d 881, 891 (La. Ct. App. 2020).

The district court characterized the timeline of events as follows:

> Berkshire took 46 days, from the September 8 submission of the [Policy Application Review] to the October 24 notation, to consider the facts and decide that it would pay the claim. To that point, it was not being arbitrary or acting without probable cause. But after that point, there was no further excuse for delay. Berkshire possessed an appraisal report—satisfactory proof of loss—for more than two months before it decided to pay. Yet, once it decided to pay, it delayed more than 30 additional days, until November 28, to issue a check. There is no explanation for why Berkshire delayed beyond the 30-day period once it (1) had facts that showed it no longer had a basis for a good faith defense based on the VIN and (2) it decided to pay the claim. The court finds that this delay was arbitrary, capricious, or without probable cause.

The August 7, 2017 appraisal report provided a satisfactory proof of loss, and the parties do not dispute that 35 days passed between October 24, 2017 (when Berkshire agreed to pay the claim) and November 28, 2017 (when payment was issued). Thus, what remains in dispute is whether Berkshire had a legitimate good faith defense, and was therefore not acting arbitrarily, for delaying payment on the claim.

"The phrase 'arbitrary, capricious, or without probable cause' . . . describe[s] an insurer whose willful refusal of a claim is not based on a good-faith defense." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 635 (5th Cir. 2013) (quoting *La. Bag Co. v. Audubon Indem. Co.*, 999 So.2d 1104, 1114 (La. 2008)). "Under Louisiana law, 'penalties should be imposed only when the facts negate probable cause for nonpayment,' not 'when the insurer has a reasonable basis to defend the

claim and acts in good-faith reliance on that defense.'" *Id.* (quoting *La. Bag Co.*, 999 So.2d at 1114). Thus, "an insurer need not pay a disputed amount in a claim for which there are substantial, reasonable and legitimate questions as to the extent of the insurer's liability or of the insured's loss." *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 759 F.3d 427, 436 (5th Cir. 2014) (quoting *La. Bag Co.*, 999 So.2d at 1114). "Whether an insured's conduct is arbitrary or capricious 'depends on the facts known to the insurer at the time of its action. . . . Because the question is essentially a factual issue, the trial court's finding should not be disturbed on appeal absent manifest error.'" *Id.* (citations omitted).

The district court's finding that Berkshire's conduct was "arbitrary, capricious, or without probable cause" is not manifestly erroneous. Rightfully so, Berkshire demanded additional proof and investigated MLJ's claim due to concerns that "MLJ may be operating both of these trucks, 251 and 253, but only paying a premium with respect to one of those trucks." But during the investigation, Berkshire received more than sufficient proof of MLJ's possession of the 253 truck and that the 251 truck was neither in Turnipseed's or MLJ's possession since November 2016. Thomas Mortland, a Vice President of Berkshire, also testified that the insurer agreed to pay the claim after finding no presence of fraud:

> I can tell you that there are situations I described funny business, fraud, however you describe it, where there is an apparent intent to have these other vehicles. And again, we determined that's not what happened here. We concluded [the VIN mix-up] was inadvertent, but at the same time, we were not, as the underwriter indicated early on, we were not going to issue an endorsement adding that vehicle.

Importantly, once Berkshire expressly agreed and committed to paying the claim on October 24, 2017, it no longer had a reasonable basis for refusing to

issue or delaying such payment. At that point, the thirty-day statutory clock began to run.

The thirty-day deadline is strictly construed. "Any insurer who fails to pay said undisputed amount has acted in a manner that is, by definition, arbitrary, capricious or without probable cause." *La. Bag Co.*, 999 So.2d at 1120. "[T]he failure to pay an undisputed amount is a per se violation of the statute." *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 739 (5th Cir. 2010). Here, the imposition of statutory penalties was appropriate because Berkshire failed to pay the amount within thirty days of October 24. *See La. Bag Co.*, 999 So.2d at 1119 (finding that as soon as "the blanket coverage issue was resolved by September 1, 2003," the insurer's "failure to tender those undisputed amounts within the statutorily mandated time period was, by definition, arbitrary, capricious or without probable cause"); *see Versai Mgmt. Corp.*, 597 F.3d at 739 (affirming statutory penalties where insurers "possessed adequate knowledge of an undisputed claim" on May 26th and eventually paid in late July and early August, because "merely behaving in a less-arbitrary and capricious manner does not absolve insurers of the consequences of delay").

We also reject Berkshire's suggestion that the thirty-day clock started on November 2, 2017, when it requested the title to the truck in order to verify ownership and who had interest in the vehicle. Berkshire received notice that GE TF Trust was the loss payee of the policy on August 16, 2017. *Cf. Richardson v. GEICO Indem. Co.*, 48 So.3d 307, 315–16 (La. Ct. App. 2010). Further, an insurer need not pay a disputed amount where there are "substantial, reasonable and legitimate questions as to the extent of *the insurer's liability or of the insured's loss*." *La. Bag Co.*, 999 So.2d at 1114 (emphasis added). Berkshire's verification of ownership did not pertain to Berkshire's liability or MLJ's loss; instead, it was only part of a procedural process in issuing the payment to the insured. Therefore, we cannot say that

the district court committed "manifest error" in finding that Berkshire acted arbitrarily by failing to issue payment within thirty days of agreeing to do so, when it also had prior knowledge of who owned or had interest in the truck. *La. Bag Co.*, 999 So.2d at 1122.

## IV. Conclusion

For the foregoing reasons, we AFFIRM.