### Michael S. LITTLE

v.

### USAA CASUALTY INS. CO.

**Civil Action No. 08–1021.**

United States District Court,
W.D. Louisiana,
Lafayette Division.

Sept. 18, 2009.

---

Craig Douglas Little, Forest & Little, Lafayette, LA, for Michael S. Little.

Seth A. Schmeeckle, Tina L. Kappen, Lugenbuhl Wheaton et al., New Orleans, LA, for USAA Casualty Ins. Co.

## *MEMORANDUM RULING*

REBECCA F. DOHERTY, District Judge.

Pending before this Court is a Report and Recommendation issued by the magistrate judge, in which the magistrate judge recommends the "Motion to Dismiss Plaintiff's Complaint for Damages; Breach of Contract; Breach of Implied Covenant of Good Faith; and Bad Faith Dealing With Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6)" filed by defendant USAA Casualty Insurance Company ("USAA") [Doc. 7] be granted in its entirety and that plaintiff Michael S. Little's complaint against USAA be dismissed with

prejudice [Doc. 22].[1] Plaintiff filed an Objection [Doc. 23] to the magistrate judge's Report and Recommendation, and USAA filed a Response to plaintiff's Objection [Doc. 26]. After consideration of the Report, the plaintiff's Objection, and USAA's Response, this Court AFFIRMS the findings and conclusion of the magistrate judge with certain clarifications. Therefore, the instant Motion to Dismiss is GRANTED, and plaintiff's complaint against USAA is DISMISSED WITH PREJUDICE.

## I. Factual and Procedural Background

The factual background of this matter has been set forth succinctly by the magistrate judge in her Report and Recommendation. For the sake of clarity, this Court notes the following. The plaintiff in the instant matter is a former employee of Chevron Global Technology Services Company ("Chevron"). The underlying action to the instant matter arises out of plaintiff's employment with Chevron. Plaintiff, a lawyer, began working for Chevron in 1984 in various legal positions, first in the United States and then on overseas assignments from about 1996 through the spring of 2003.[2] Chevron alleges plaintiff accepted a position with it in Venezuela in 1999 which was subject to a Labor Contract and an Expatriate Agreement.[3] Chevron terminated plaintiff's employment on December 31, 2003. On May 4, 2004, plaintiff sued Chevron in a Venezuela court, seeking statutory employment severance benefits.[4] The Venezuelan action concluded in plaintiff's favor.

Thereafter, on May 16, 2006, Chevron filed suit against plaintiff in California, alleging plaintiff violated both the Labor Contract and the Expatriate Agreement, which each required that any employment-related claims be filed in California.[5] Chevron also alleges the parties' agreements contain implied covenants of good faith and fair dealing which plaintiff breached by filing suit in Venezuela rather than California.[6]

In the instant lawsuit, plaintiff alleges when he resided in Arizona in 2003, USAA sold him a Homeowners Policy and an Umbrella Policy obligating USAA to defend and pay suits brought against him for damages caused by an "*occurrence*" causing "*personal injury*" as defined under the policies. Plaintiff contends the policies unambiguously define "*occurrence*" and "*personal injury*" to include "*malicious prosecution.*" On June 8, 2006, plaintiff was served with the Chevron complaint. Plaintiff contends on its face, the Chevron lawsuit claims damages for (1) breach of contract and (2) breach of the covenant of good faith and fair dealing, but in reality, the complaint is retaliatory and constitutes malicious prosecution against plaintiff designed to humiliate, punish, oppress, and force plaintiff to incur substantial legal defense costs. Plaintiff notified USAA of

---

1. The instant case was originally assigned to another Article III judge who has since taken senior status. Prior to the time he took senior status, the judge presiding over this case referred the instant motion to the magistrate judge for Report and Recommendation. Five months after the motion was filed and referred to the magistrate judge, the instant case was transferred to this Court. This Court only recently received the instant Report and Recommendation, and the Objections and Responses of the parties.

2. *See* Chevron's Complaint against plaintiff, filed in the Northern District of California, Doc. 17, at ¶ 8.

3. *Id.* at ¶¶ 10–14.

4. *Id.* at ¶¶ 15–16.

5. *Id.* at ¶ 17.

6. *Id.* at ¶¶ 26–30.

this claim as required under the policies on June 9, 2006 and requested that notice of coverage be provided by June 22, 2006. By letter dated July 28, 2006 letter, USAA denied coverage.

Plaintiff thereafter sued USAA in this Court. In his Complaint, plaintiff alleges USAA has breached the "express terms and conditions of the Policies, and has otherwise denied Plaintiff the insurance coverage in a manner arbitrary, negligent, and without proper cause and in bad faith." Plaintiff further alleges USAA "has ignored its duty of good faith and fair dealing in handling the Plaintiff's claim in the following manner: (a) [r]efusing to review the Policies in good faith to support coverage; (b) [r]efusing to pay claims and benefits [to] which the plaintiff is entitled under the terms of his Policies; (c) [i]nten-tionally failing to conduct a reasonable investigation into the claim based on all available information supplied by Plaintiff; (d) [i]ntentionally failed to make reasonable and timely payments in an effort to settle the claims; (e) [i]ntentionally misquoted certain provisions of the policies to Plaintiff in an effort to justify denial of coverage constituting smoking gun bad faith. On information and belief, given that the CEO of USAA refused to instruct his general counsel to investigate further, this constitutes fraudulent behavior."

Additionally, plaintiff contends in refusing to defend him, USAA has violated Arizona Revised Statute § 20–442 ("Unfair Trade Practices Prohibited"),[7] § 20–443 ("Misrepresentations and False Advertising Policies"),[8] and § 20–461 ("Unfair Claim Settlement Practices").[9] Plaintiff

---

**7.** Arizona Revised Statute § 20–442 states:
> No person shall engage in this state in any trade practice which is prohibited by this article, or defined in this article as, or determined pursuant to this article to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance.

A.R.S. § 20–442 (West 2009).

**8.** Arizona Revised Statute 20–443 states:
> A. A person shall not make, issue or circulate, or cause to be made, issued or circulated, any estimate, illustration, circular, sales material or statement:
> 1. Misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised or the dividends or share of the surplus to be received.
> 2. Making any false or misleading statement as to the dividends or share of surplus previously paid on similar policies.
> 3. Making any misleading representation or any misrepresentation as to the financial condition of any insurer or as to the legal reserve system upon which any life insurer operates.
> 4. Using any name or title of any policy or class of policies misrepresenting the true nature of the policy.
> 5. Making any misrepresentation to any policyholder for the purpose of inducing or tending to induce the policyholder to lapse, forfeit, surrender, retain or convert any insurance policy.
> 6. Referring to the coverage or any of the provisions of chapter 3, article 6 or 7 of this title [FN1] in connection with the sale or attempted sale of any policy of insurance, except in connection with the notice prescribed in § 20–400.10, subsection E, § 20–410, subsection B and § 20–422, subsection C.
> B. An insurance producer, consultant or third party administrator shall not falsely disclose the method or amount of compensation associated with a health benefits plan as defined in § 20–2301.

A.R.S. § 20–443 (West 2009).

**9.** Arizona Revised Statute 20–461 states:
> A. A person shall not commit or perform with such a frequency to indicate as a general business practice any of the following:
> 1. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.
> 2. Failing to acknowledge and act reasonably and promptly upon communications with respect to claims arising under an insurance policy.
> 3. Failing to adopt and implement reasonable standards for the prompt investi-

seeks "all damages discussed above, including without limitation, all contractual, extra-contractual (tort), and punitive damages." Plaintiff also seeks costs, attorney's fees, penalties and interest pursuant to Arizona Revised Statute § 12–341.01.[10]

In the instant motion to dismiss, USAA seeks a dismissal of plaintiff's complaint on grounds it has no duty to defend or indemnify him against Chevron's suit pursuant to the terms of either the Homeowner's Policy or the Umbrella Policy. Specifically, USAA contends the allegations in the Chevron lawsuit fail to establish (1) liability arising out of "personal injury" as that term is defined in the policies; or (2) "personal injury" caused by an "occurrence."[11]

gation of claims arising under an insurance policy.

4. Refusing to pay claims without conducting a reasonable investigation based upon all available information.

5. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.

6. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

7. As a property or casualty insurer, failing to recognize a valid assignment of a claim. The property or casualty insurer shall have the rights consistent with the provisions of its insurance policy to receive notice of loss or claim and to all defenses it may have to the loss or claim, but not otherwise to restrict an assignment of a loss or claim after a loss has occurred.

8. Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds.

9. Attempting to settle a claim for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

10. Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured,

11. Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which the payments are being made.

12. Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.

13. Delaying the investigation or payment of claims by requiring an insured, a claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information,

14. Failing to promptly settle claims if liability has become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

15. Failing to promptly provide a reasonable explanation of the basis in the insurance policy relative to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

[. . .]

D. Nothing contained in this section is intended to provide any private right or cause of action to or on behalf of any insured or uninsured resident or nonresident of this state. It is, however, the specific intent of this section to provide solely an administrative remedy to the director for any violation of this section or rule related to this section.

A.R.S. § 20–461 (West 2009).

10. Arizona Revised Statute § 12–341.01 states:

A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees . . .

[. . .]

D. The court and not a jury shall award reasonable attorney fees under this section.

A.R.S. § 12–341.01 (West 2009).

11. This Court has question as to whether the instant lawsuit should have been brought in

## II. Applicable Law

As an initial matter, this Court addresses the issue of the applicable law that governs interpretation of the insurance policies at issue. The magistrate judge conducted a choice of law analysis and concluded Louisiana law applies as the law of the forum state, noting Louisiana law and Arizona law do not conflict. *See Mumblow v. Monroe Broadcasting, Inc.,* 401 F.3d 616, 620 (5th Cir.2005).[12] In his Objections, plaintiff states "Arizona law is applicable to coverage here," but also cites to California and New York law—which are cited as "persuasive authority and the gold standard on insurer duty to defend and bad faith issues." Plaintiff cites Louisiana law "as appropriate."[13] In its Response, USAA contends the policies at issue were delivered to plaintiff in Arizona when he resided there, and, arguably, therefore, Arizona law governs the interpretation of those policies. However, USAA points out the magistrate judge conducted a choice of law analysis and found no conflict between Arizona and Louisiana law with regard to contract interpretation and the insurer's duty to defend. USAA does not appear to dispute the application of Louisiana law. Specifically, USAA notes the plaintiff has not objected to the magistrate judge's interpretation of USAA's coverage obligations—if any—under Louisiana law, nor does plaintiff dispute there is no conflict between Arizona and Louisiana law.

This Court concludes the magistrate judge properly conducted a choice of law analysis and properly concluded that, because there is no conflict between Arizona and Louisiana law with regard to contract interpretation and the duties of the insurer under the facts and circumstances of the instant case, Louisiana law governs the interpretation of the policies at issue pursuant to Fifth Circuit jurisprudence. Therefore, this Court is not bound by cases from other jurisdictions, although this Court notes that, to the extent Arizona law does not conflict with Louisiana law, the outcome would remain the same under an application of Arizona law.

## III. Analysis

The magistrate judge concluded the Chevron lawsuit against the plaintiff in the underlying California litigation does not trigger coverage under either the Homeowner's Policy or the Umbrella Policy issued by USAA, and this Court concludes the magistrate judge's conclusion is correct. Consequently, in support of its Ruling this date, this Court adopts the Report and Recommendation of the magistrate judge, with the following clarification. The Court also issues this Ruling for the pur-

California as a third-party demand against USAA. If the issues before this Court involve a factual inquiry—as the parties have couched them—this Court believes the issues are more properly decided by the court in California, which is hearing the Chevron lawsuit against plaintiff. However, as the Court this date concludes the Chevron lawsuit is not an "occurrence" as defined by the policies, this Court's initial concern is lessened.

**12.** As the magistrate judge points out, a federal district court with diversity jurisdiction applies the law of the forum state to determine which state's law applies. *Mumblow,* 401 F.3d at 620. Under the Louisiana choice-of-

law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract, *American Elec. Power Co., Inc. v. Affiliated FM Ins. Co.,* 556 F.3d 282, 285, n. 2 (5th Cir.2009). Because the insurance policies were issued and allegedly breached in Arizona when Little resided there, Arizona law governs unless there is no conflict between Arizona and Louisiana law, in which case Louisiana law applies. *Mumblow,* 401 F.3d at 620.

**13.** *See* plaintiff's Objections, Doc. 23, at p. 2.

pose of addressing certain of the specific Objections raised by the plaintiff.

### A. The Plaintiff's Objections

The plaintiff asserts ten objections, which are summarized as follows:

- the magistrate judge improperly analyzed USAA's defense obligation by ignoring certain policy terms contrary to law;[14]

- the magistrate judge did not consider USAA's defense obligation and fair dealing under Arizona's Unfair Claim Practices Statute;[15] and

- the magistrate judge ignored USAA's bad faith and improperly refused to estop USAA from denying coverage.[16]

### B. The USAA Homeowner's and Umbrella Policies

The USAA Homeowner's policy of insurance that was in effect at all relevant times herein contains a Personal Injury En-

dorsement, which provides in relevant part:

### COVERAGE E—Personal Liability

If a claim is made or a suit is brought against any insured for damages because of bodily injury, property damage or personal injury caused by an occurrence to which this coverage applies, we will:

1. Pay up to the limit of liability for the damages for which the insured is legally liable; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claims or suit that we decide is appropriate. Our duty to settle or defense ends when the amount we pay or tender for damages resulting from the occurrence equals our limit of liability. This coverage does not provide defense to any insured

14. Plaintiff's Objections related to his arguments concerning USAA's alleged duty to defend are as follows:

> Objection No. 1; "The Court bases its dismissal recommendation solely on intentional misrepresentations of USAA and a flawed interpretation of *one* coverage provision addressing indemnity only—not defense coverage."
> Objection No. 2: "The Court ignores the Policy terms and basic precepts as to duty to defend in recommending dismissal."
> Objection No. 3: "The Court ignores Louisiana and Arizona—specific principles regarding interpretation of an insurance policy—a contract of adhesion."
> Objection No. 4: "The Court ignores that there is at least potential indemnity coverage triggering duty to defend."
> Objection No. 5: "The Court ignores that there is not just "potential"—but actual defense coverage, *and* indemnity coverage triggering duty to defend."
> Objection No. 10: "The Court ignores an insurer's legal duty to look for coverage-not only denial of coverage."

15. Plaintiff's Objections related to his arguments concerning USAA's alleged duty of good faith and fair dealing under Arizona's Unfair Claim Practices Statute are as follows:

> Objection No. 6: "The Court ignores the duty of good faith and fair dealing; Arizona Unfair Claims Practices Statute."
> Objection No. 7: "The Court ignores USAA [sic] breach of [1] the implied covenant of good faith and fair dealing and[2] Arizona Unfair Claims Practices Statute."

16. Plaintiff's Objections related to his arguments concerning USAA's alleged bad faith and improper refusal to estop USAA from denying coverage:

> Objection No. 8: "The Court ignores misrepresentations to the Court as to the validity of the very Policies at issue."
> Objection No. 9: "The Court ignores USAA [sic] smoking gun bad faith in refusing to estop USAA from denying coverage."

for criminal prosecution or proceedings.

We will not pay for punitive damages or exemplary damages, fines or penalties.

The following definition is added:

Personal Injury means:

[ . . . ]

> g. malicious prosecution or humiliation.

The definition of "occurrence" is deleted and replaced by the following:

"occurrence" means:

a. an accident, including continuous or repeated exposure to substantially the same generally harmful conditions, which results, during the policy period, in bodily injury or property damage.

b. an event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any insured, which results, during the policy period, in personal injury, neither expected nor intended from the standpoint of the insured.[17]

The Homeowners Policy itself defines "bodily injury" and "property damage" as follows:

> "bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

> "property damage" means physical damage to or destruction of tangible property, including loss of use of this property.[18]

In addition to the Homeowners Policy, USAA also issued an Umbrella Policy to plaintiff, which provides in relevant part:

### Liability Coverage

We will pay for damages an insured becomes legally obligated to pay in excess of the retained limit. This obligation must arise from an occurrence not excluded by this policy. We will not pay for punitive or exemplary damages, fines or penalties.

[ . . . ]

### Defense Coverage

If a claim is made or suit is brought against any insured for damages caused by an occurrence to which Liability Coverage applies, we will provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. However, we will not provide this coverage if the occurrence is covered by underlying insurance or any other liability insurance available to any insured.[19]

**"Personal injury"** in the Umbrella policy is defined as "**injury other than bodily injury arising out of:**

**a.** **Libel, slander, defamation of character, humiliation, malicious prosecution, invasion of rights of privacy.**

**b.** **False arrest, false imprisonment, wrongful detention."** [20]

As the magistrate judge sets forth in detail in the Report and Recommendation, Chevron has filed suit against the plaintiff,

---

17. *See* Homeowner's Policy, attached as Exh. "B" to USAA's Motion to Dismiss, Doc. 7, at Bates No. USAA_Little 000057.

18. *See* Homeowner's Policy, attached as Exh. "B" to USAA's Motion to Dismiss, Doc. 7, Bates No. USAA_Little000029.

19. *See* Umbrella Policy, attached as Exh. "C" to USAA's Motion to Dismiss, Doc. 7, Bates No. USAA_Little00008.

20. *See* Definitions Section of Umbrella Policy, Doc. 17, Bates No. USAA_Little000007.

its former employee, in federal district court in California, for breach of contract and breach of the covenant of good faith and fair dealing for violating a labor contract and expatriate agreement that allegedly required plaintiff to file suit against Chevron in California.

The Personal Injury Endorsement of the Homeowners Policy states personal liability coverage is provided only "[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury, property damage or personal injury *caused by an occurrence to which this coverage applies* ..."

■ "Occurrence" is defined under the Personal Injury Endorsement as "an event or series of events ... proximately **caused by an act or omission of any insured,** which results, during the policy period, in personal injury, *neither expected nor intended from the standpoint of the insured.*" [21] Plaintiff contends the "occurrence" is the Chevron lawsuit against him. After review of the record, however, this Court concludes the Chevron lawsuit is not an "occurrence" within the meaning of the policy. Indeed, Chevron's lawsuit against the plaintiff cannot be said to have been unexpected, given the language contained within the employment contracts between plaintiff and Chevron that purport to require plaintiff litigate all disputes with Chevron in California. Plaintiff sued Chevron in Venezuela knowing the venue provisions existed, whether he believed them to be valid or not. Plaintiff cannot now seek the benefit of coverage on grounds a suit to enforce provisions whose presence is not disputed as being found within a contract, that, itself, is not disputed, is *unexpected.* Chevron included the very specific venue provisions in the em-

ployment contracts and allegedly incurred damages of more than $50,000 in defending plaintiff's suit against it in Venezuela. Given the undisputed existence of the contracts and the undisputed presence of the venue provisions within those contracts, Chevron's suit to enforce those provisions in the face of plaintiff's actions, cannot be said to be "unexpected."

The coverage grant under the Personal Liability Endorsement of the Homeowner's Policy makes clear coverage is only provided in the event that there is an "occurrence," as follows:

### COVERAGE E—Personal Liability

> **If a claim is made or a suit is brought against any insured for damages because of bodily injury, property damage or personal injury *caused by an occurrence* to which this coverage applies, we will:**
>
> [...]

Similarly, the "Liability Coverage" portion of the Umbrella Policy states "[w]e will pay for damages an insured becomes legally obligated to pay in excess of the retained limit. *This obligation must arise from an occurrence not excluded by this policy.*" Therefore, because the Chevron lawsuit does not constitute an "occurrence" as defined under the terms of either the Homeowner's Policy or the Umbrella Policy, this Court need not address whether the claim or suit brought against plaintiff by Chevron is a covered claim for "bodily injury," "property damage" or "personal injury" within the meaning of the policies.

Considering the foregoing, the objections asserted by the plaintiff contending

---

**21.** *See* Homeowner's Policy, attached as Exh. "B" to USAA's Motion to Dismiss, Doc. 7, at

Bates No. USAA_Little000057.

that coverage is afforded under the policies are OVERRULED.

### C. Duty to Defend

Plaintiff's arguments that USAA was required to provide him with a defense are similarly OVERRULED. As this Court has found there is no "occurrence" to trigger coverage, ordinarily the duty to defend would not be a consideration. However, as plaintiff argues the Chevron lawsuit is, itself, the occurrence, and the Chevron lawsuit is a malicious prosecution and thus triggers the coverage for "personal injury," the issue of defense of that alleged malicious prosecution—the alleged "occurrence"—becomes, perhaps, relevant for discussion. Generally, an insurer's obligation to defend suits against its insured *for suits brought against the insured* is broader than its liability for damages. Under these somewhat unique facts involving a homeowner's policy, the insurer's duty to defend against a lawsuit argued to be an "occurrence" resulting in "personal injury" is determined from the plaintiff's— here Chevron's—pleadings, which Little alleges are a "malicious prosecution," and the face of the policy, without consideration of extraneous evidence. *Graphia v. Schmitt,* 7 So.3d 716, 718 (La.App. 5th Cir.2009); *Prestenbach v. Badeaux,* 865 So.2d 180, 182 (La.App. 5th Cir.2003); *Audubon Trace Condominium Ass'n v. Brignac–Derbes, Inc.,* 862 So.2d 157, 159 (La. App. 5th Cir.2003), *writ denied,* 869 So.2d 822 (La.2004); *Yount v. Maisano,* 627 So.2d 148, 153 (La.1993). *See also American Home Assurance Company v. Czarniecki,* 255 La. 251, 230 So.2d 253 (1969); *Meloy v. Conoco, Inc.,* 504 So.2d 833 (La. 1987). The allegations in a plaintiff's petition—again, here Chevron—are liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured.

*Yount,* 627 So.2d at 153, *citing Benoit v. Fuselier,* 195 So.2d 679 (La.App. 3rd Cir. 1967); *American Home Assurance Company, supra.*

On the face of Chevron's pleadings, it is clear plaintiff and Chevron entered into certain contracts; those contracts contained venue provisions and expatriate provisions designating suit against Chevron must be brought in California; plaintiff filed suit under those contracts not in California, but in Venezuela; Chevron expended monies to defend itself in the Venezuela courts; and Chevron has brought suit against plaintiff alleging breach of those contracts and the select provisions of those contracts. Consequently, *the suit by Chevron* cannot be said, on the face of Chevron's petition, to have been *unexpected,* notwithstanding *whether it is meritorious or not.* Thus, when looking to Chevron's petition, on its face, and the requirement an "occurrence" be "unexpected," this Court concludes the Chevron lawsuit is not an "occurrence" under the meaning of the policy and thus coverage is not owed, nor is the broader duty to defend owed.

Considering the foregoing, this Court AFFIRMS and ADOPTS the findings of the magistrate judge that USAA is not obligated to provide plaintiff with a defense in this matter with the present clarification.

Additionally, with respect to plaintiff's claim the USAA adjuster fraudulently misquoted the policies in USAA's July 18, 2006 denial letter and should therefore be estopped from arguing USAA has no duty to defend, this Court finds plaintiff's argument has no merit, for the reasons set forth in the magistrate judge's Report and Recommendation. This Court's independent review of the denial letter shows USAA explained it was not providing coverage because the activities giving rise to Chevron's lawsuit do not constitute an "oc-

currence," and that, even if an occurrence existed, the occurrence must result in "bodily injury," "property damage," or "personal injury" as defined in the policy. Because this Court finds, as the magistrate judge found, the plaintiff has cherry-picked certain portions of the denial letter while ignoring other portions of the denial letter which clearly explain and support USAA's denial of coverage, this Court agrees with the magistrate judge's finding that USAA should not be estopped from denying it owes a duty to defend.

### D. *Arizona Unfair Claims Practices Statute/Bad Faith Penalties*

■ Plaintiff's Objections concerning bad faith penalties under Arizona's Unfair Claim Practices Statute, A.R.S. § 20–461, are similarly OVERRULED. Indeed, the question of bad faith is pretermitted by this Court's determination that there is no coverage under the policies. Additionally, as USAA points out in its Response to the plaintiff's Objections, plaintiff has no private right of action under the Arizona Unfair Claims Settlement Practices Statute pursuant to the express language of the statute, to wit:

> D. *Nothing contained in this section is intended to provide any private right or cause of action to or on behalf of any insured or uninsured resident or nonresident of this state.* It is, however, the specific intent of this section to provide solely an administrative remedy to the director for any violation of this section or rule related to this section.

A.R.S. § 20–461(D) (emphasis added).

Accordingly, the Court concludes plaintiff's claims against USAA for bad faith denial of coverage lack merit.

### IV. Conclusion

Considering the foregoing,

IT IS ORDERED THAT the findings and conclusion of the magistrate judge are AFFIRMED, with the clarifications noted herein. Therefore, USAA Casualty Insurance Company's "Motion to Dismiss Plaintiff's Complaint for Damages; Breach of Contract; Breach of Implied Covenant of Good Faith; and Bad Faith Dealing With Prejudice Pursuant to Federal Rule of Civil Procedure 12(b)(6)" [Doc. 7] is GRANTED, and plaintiff's complaint against USAA is DISMISSED WITH PREJUDICE.

## REPORT & RECOMMENDATION ON USAA'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) *(Rec. Doc. 7)*

MILDRED E. METHVIN, United States Magistrate Judge.

In this diversity action, plaintiff Michael S. Little claims that defendant USAA Casualty Insurance Company should be required to defend or indemnify him against an action filed by Chevron Global Technology Services Company in California. Before the court is defendant's motion to dismiss for failure to state a claim. The issues have been fully briefed.[1]

### FINDINGS AND CONCLUSIONS

#### *Background*

### I. The Chevron Complaint

The Chevron complaint, the underlying action to the instant matter, arises out of Little's employment with Chevron. Little,

---

**1.** Defendant filed a motion to dismiss on October 6, 2008 (Rec. Doc. 7). Plaintiff filed an opposition on October 21, 2008. (Rec. Doc.

11). Defendant filed a reply on November 17, and plaintiff filed a sur-reply on December 5, 2008. (Rec. Docs. 16, 19).

a lawyer, began working for Chevron in 1984 in various legal positions, first in the United States and then on overseas assignments from about 1996 through the spring of 2003. (Rec. Doc. 17, ¶ 8). Chevron alleges that Little accepted a position with it in Venezuela in 1999 which was subject to a Labor Contract and an Expatriate Agreement. (*Id.*, ¶¶ 10–14). Chevron terminated plaintiff's employment on December 31, 2003.

On May 4, 2004, Little sued Chevron in a Venezuela court, seeking statutory employment severance benefits. (*Id.*, ¶¶ 15–16). The Venezuelan action concluded in Little's favor.

Thereafter, on May 16, 2006, Chevron filed suit against Little in California, alleging that Little violated both the Labor Contract and the Expatriate Agreement which each required that any employment-related claims be filed in California. (*Id.*, ¶ 17). Chevron also alleges that the parties' agreements contain implied covenants of good faith and fair dealing which plaintiff breached by filing suit in Venezuela rather than California. (*Id.*, ¶¶ 26–30).

## II. Plaintiff's Complaint

Little alleges the following facts: when he resided in Arizona in 2003, USAA sold him a Homeowners and an Umbrella policy obligating USAA to defend and pay suits brought against him for damages caused by an *occurrence* causing *personal injury* as defined under the policies. The policies unambiguously define *occurrence* and *personal injury* to include *malicious prosecution*. On June 8, 2006, Little was served with a complaint filed against him by his former employer, Chevron Corporation affiliates in the U.S. District Court for the Northern District of California. On its face, the lawsuit claims damages for (1)

breach of contract and (2) breach of the covenant of good faith and fair dealing; however, in reality, the complaint is a retaliatory and constitutes malicious prosecution designed to humiliate, punish, oppress, and force Little to incur substantial legal defense costs. Little notified USAA of this claim as required under policies on June 9, 2006 and requested that notice of coverage be provided by June 22, 2006. By letter dated July 28, 2006 letter, USAA denied coverage.[2] The Venezuelan Supreme Court confirmed the malicious nature of the Chevron lawsuit by holding that Venezuelan courts have exclusive jurisdiction over Venezuelan labor matters and admonishing Chevron for continuing to contest the jurisdiction of Venezuelan courts. Little notified USAA adjuster P.J. Baker and USAA's Chairman and CEO, Robert G. Davis, that the suit should be classified as a "malicious prosecution;" Baker subsequently denied the claim by fraudulently misquoting the policy terms; Little notified Davis of Baker's unconscionable actions, but Davis did not respond.

Plaintiff seeks damages for USAA's alleged breach of good faith and fair dealing in handling his claim.

USAA seeks a dismissal of Little's complaint because it has no duty to defend or indemnify him against Chevron's suit pursuant to the terms of the insurance policy.

## III. Fed.R.Civ.P. 12(b)(6)—Motion to Dismiss

### A. Standard of Review

When deciding a Rule 12(b)(6) motion to dismiss, "[t] he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby*

---

**2.** The denial letter is attached to Little's opposition and is dated July 18, 2006.

*Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir.2004)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level[.]'" *Id.* (quoting *Bell Atl.,* 127 S.Ct. at 1965). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]." *Bell Atl.,* 127 S.Ct. at 1964–65 (citations, quotation marks, and brackets omitted).

### B. Whether the Court Can Consider Matters Outside the Pleadings

USAA attaches copies of the insurance contracts and the Chevron complaint to its memoranda. Little attaches a copy of P.J. Baker, Sr. Litigation Manager's denial letter and a letter from USAA confirming that plaintiff had continuous coverage from since 2003. Neither party objects to the other attachments.

■ In general, the court may only consider the pleadings and any attachments to the pleadings. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). However, courts may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim because the documents merely assist the plaintiff in establishing the basis of the suit and the

court in making the basic determination if plaintiff has stated a claim. *Id.* at 498–99.

In his complaint, Little refers to the Chevron complaint, the insurance contracts for which he coverage with USAA when Chevron filed its complaint, and the denial letter in his complaint. Moreover, these documents are central to his claim. The documents will therefore be considered in the analysis of the motion to dismiss.

### C. Choice of Law

Little requests in his complaint that Arizona law be applied.[3] USAA cites Arizona law but argues that the same result would be reached whether either Arizona or Louisiana state law is applied. Little has not cited any conflict of law between Arizona and Louisiana law. The controlling legal issues in the case concern the construction of the insurance contract and USAA's duty to defend.

■ A federal district court with diversity jurisdiction applies the law of the forum state to determine which state's law applies. *Mumblow v. Monroe Broadcasting, Inc.,* 401 F.3d 616, 620 (5th Cir.2005). Under the Louisiana choice-of-law regime, the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract, 556 F.3d 282, 285–87 (5th Cir.2009). Because the insurance policies were issued and allegedly breached in Arizona when Little resided there, Arizona law governs unless there is no conflict between Arizona and Louisiana law, in which case Louisiana law applies. *Mumblow,* 401 F.3d at 620.

■ Under either Arizona or Louisiana law, when interpreting an insurance contract, the court's role is to determine the intention of the parties.[4] Because an

---

3. Rec. Doc. 1, ¶ 12.

4. For Arizona law on insurance policy construction *see D.M.A.F.B. Federal Credit Union*

insurance policy is a contract, the terms of the policy must govern, and the court should use the rules of interpretation of contracts.[5] The court should not pervert or violate the language used to expand it beyond its plain and ordinary meaning, and the policy should be read as a whole.[6] Any ambiguity will be construed against the insurer.[7]

■■■■■ As to the duty to defend, the laws of Louisiana and Arizona are essentially the same. In both states, the duty to defend is generally broader than the duty to provide coverage, and arises even if there is a possibility of coverage under the policy. *See e.g. Steptore v. Masco Const. Co., Inc.,* 643 So.2d 1213, 1218 (La.1994) (holding that an insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy.); *United Services Auto. Ass'n v. Morris,* 154 Ariz. 113, 117, 741 P.2d 246, 250 (Az.1987) (holding that the insurer expressly obligates itself to the insured when issuing a liability insurance contract to defend any claim potentially covered by the policy).[8]

---

*v. Employers Mut. Liability Ins. Co. of Wis.,* 96 Ariz. 399, 402–403, 396 P.2d 20, 22–23 (Ariz. 1964) ([t]he cardinal principle pertaining to the construction and interpretation of insurance contracts is that the intention of the parties should control. An insurance policy is a contract, and in an action based thereon the terms of the policy must govern. In construing an insurance contract, where there is any ambiguity, or more than one possible construction of the provisions thereof, it is to be construed most strongly against the insurer and in favor of the insured. But, where the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyo[ ]nd its plain and ordinary meaning or add something to the contract which the parties have not put there); *Sparks v. Republic Nat. Life Ins. Co.,* 132 Ariz. 529, 536, 647 P.2d 1127, 1134 (Az.1982) ("[T]he policy must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions.").

For Louisiana law *see Cadwallader v. Allstate Ins. Co.,* 848 So.2d 577, 580, 2002–1637 (La.2003) (citations omitted) (An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning.... An insurance contract, however, should not be interpreted in an un-reasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer).

5. *Id.*

6. *Id.*

7. *Id.*

8. In Louisiana, the insurer's duty to defend is determined solely from the plaintiffs' pleadings and the policy, without consideration of extraneous evidence. *Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc.,* 954 F.2d 1075, 1078 (5th Cir.1992). To the contrary, Arizona decisions "clearly give an insurer the right to make a reasonable investigation of the facts in order to avoid a duty to defend ostensibly imposed by the allegations of the complaint", *U.S. Fidelity & Guar. Corp. v. Advance Roofing & Supply Co., Inc.,* 163 Ariz. 476, 480, 788 P.2d 1227, 1231 (Ariz. App.1989) *citing Kepner v. Western Fire Insurance Co.,* 109 Ariz. 329, 331, 509 P.2d 222,

Because Louisiana and Arizona law are in agreement on the principles for interpreting insurance contracts and the duty of a liability insurer to defend its insured, the undersigned finds that Louisiana law should be applied.

### Analysis

### I. Indemnification

USAA issued several Homeowner's policies of insurance to Little for four annual periods beginning in April 27, 2004 and concluding on April 27, 2008.[9] Each of the policies contain identical language and bear the same policy number. The policies provide liability to coverage to plaintiff consistent with its terms, including the Personal Injury Endorsement. Little argues that under the plain language of the policy, USAA is obligated to defend and indemnify him against the Chevron action. Endorsement E of the Homeowner's Policy which provides personal liability coverage to Little provides in relevant part:

#### A. The Homeowner's Policy

For an additional premium, SECTION II—LIABILITY COVERAGES,

> **COVERAGE E—Personal Liability** is deleted and replaced by the following:
> **COVERAGE E—PERSONAL LIABILITY**
> If a claim is made or a suit is brought against any insured for damages because of bodily injury, **property damage** or **personal injury** caused by an occur-

rence to which this coverage applies we will:

> 1. Pay up to the limit of liability for the damages for which the insured is legally liable; and
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claims or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay or tender for damages resulting from the occurrence equals out limit of liability. This coverage does not provide defense to any insured for criminal prosecution or proceedings.

\* \* \*

The following definition is added:

Personal Injury means:

\* \* \* \*

> g. malicious prosecution or humiliation.

\* \* \* \*

"occurrence" means:

\* \* \* \*

> b. an event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any insured, which results, during the policy period, in personal injury, neither expected nor intended from the standpoint of the insured.

224 (1973). Here, USAA relies solely on the allegations of the complaint rather than asserting facts outside of the petition; thus, the difference between Arizona and Louisiana law is not relevant to the issues under review. *See Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 621 (5th Cir.2005) (considering only the relevant principles of contract interpretation to determine whether Louisiana rather than New York law should apply).

9. USAA issued Homeowner's policies to plaintiff for the policy periods from April 27, 2004 through April 27, 2005; April 27, 2005 through April 27, 2006; April 27, 2006 through April 27, 2007; and April 27, 2007 through April 27, 2008, all bearing Policy No. CIC 002638688490A. (Rec. Doc. 7–2, Rec. Doc. 16, Exh. A, B, C).

## B. The Umbrella Policy

In addition to the Homeowner's policies, USAA also issued to plaintiff Umbrella Policies for several annual periods, effective beginning February 8, 2005 with coverage ultimately concluding on February 9, 2009.[10] The Umbrella Policy provides in relevant part:

> We will pay for damages an **insured** becomes legally obligated to pay in excess of the **retained limit.** This obligation must arise from an **occurrence** not excluded by this policy. **We** will not pay for punitive or exemplary damages, fines or penalties.
>
> \* \* \* \*
>
> If a claim is made or suit is brought against any **insured** for damages caused by an **occurrence** to which Liability Coverage applies, **we** will provide a defense at **our** expense by counsel of **our** choice, even if the suit is groundless, false or fraudulent. However, **we** will not provide this coverage if the **occurrence** is covered by **underlying insurance** or any other liability insurance to any **insured.**

An "occurrence" is defined in the same way as the Homeowner's policy.[11] "Personal injury" means injury other than **bodily injury** arising out of:

> a. Libel, slander, defamation of character, humiliation, malicious prosecution, invasion of rights of privacy.[12]

## C. Coverage or Not?

Little argues that a plain reading of Section b. of the Personal Injury Endorsement, Definitions, is that the:

> *occurrence* of Chevron's unexpected, malicious, and retaliatory lawsuit against Michael Little was an *event* which was *proximately caused* by Mr. Little's Venezuelan lawsuit for termination of benefits and whistle-blowing related acts, which angered Chevron management. The filing of the malicious and retaliatory lawsuit (thinly veiled as a suit for breach of contract) against Michael Little resulted in *personal injury* (defined as *malicious prosecution*) during the policy period.[13]

Little's attempt to characterize the Chevron complaint for breach of contract and covenant of good faith and fair dealing as a malicious prosecution action for which he is covered under the USAA policy is unpersuasive. Personal liability coverage is usually purchased as one of the standard coverages of a homeowner's policy but may be purchased separately. 15 WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON III, LOUISIANA CIVIL LAW TREATISE, INSURANCE LAW AND PRACTICE, § 160. (3rd Ed. 2006).

The risk assumed under personal liability coverage is usually defined broadly as "bodily injury or property damage liability which occurs during the policy period." *Id.* at 162. General liability policies are also written on an occurrence basis, and the insuring agreement is modified by definitions and exclusions. *Id.*

**10.** USAA initially contended that Little's policy had lapsed before the Chevron complaint was filed in 2006. Chevron concedes that Little had continuous coverage under the Homeowner's policy from April 27, 2004 through April 27, 2008 and under the Umbrella Policy from February 8, 2005 through February 8, 2009. Thus, this issue is moot.

**11.** Definition 7(b) provides that an occurrence means: An event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any **insured**, which results, during the policy period, in **personal** injury, neither expected nor intended from the standpoint of the **insured.** (Rec. Doc. 7–3 at 55).

**12.** *Id.*

**13.** Rec. Doc. 11 at 4.

Just so, Little's Personal Liability Endorsement establishes that USAA will provide liability coverages to Little for an additional premium. Here, Little's policy provides him liability coverage "because of bodily injury, property damage *or personal injury* caused by an occurrence to which this coverage applies." "Personal injury" is defined to include "malicious prosecution," the language upon which Little relies for coverage. "Occurrence" is defined as "an event or series of events ... proximately caused by an act or omission of any insured, which results, during the policy period, in personal injury, *neither expected nor intended from the standpoint of the insured.*"

Here, Little entirely ignores the introductory paragraph which provides the general basis for his coverage. Little claims that the "occurrence" is the Chevron action. This argument does not recognize that in the context of the facts presented, the "occurrence" would have to be: (1) caused by Little as the insured, (2) result in personal injury to Chevron; and (3) be an event or series of events which Little *did not intend.*[14]

Little's argument stands the USAA policy on its head: he contends that the policy should protect him against the consequences of his own intentional act—the lawsuit he brought against Chevron in Venezuela. No rational reading of the policy supports this interpretation.

It is elemental that under Fed.R.Civ.P. 8(A), a plaintiff is required to state his claim. Little has cited no authority for the proposition that a defendant may answer what he believes to be the allegations of the complaint rather than the facts actually alleged. Here, Chevron alleges that it entered into a Labor Contract with Little which provided that any claim under the Contract be brought in California and which Little allegedly breached by bringing his Venezuelan action. Chevron also alleges that Little breached the implied covenants of good faith and fair dealing when he brought his action in Venezuela. Chevron has thus alleged a contract and a breach. It is clear that Chevron is bringing a breach of contract action together with the related breach of the covenants of good faith and fair dealing.

Moreover, in order to allege a malicious prosecution action, under either Louisiana or Arizona law, a cause of action for malicious prosecution requires a plaintiff to allege that the defendant brought a lawsuit which was terminated in plaintiff's favor.[15] Here, plaintiff alleges that Chevron is maliciously prosecuting him because of his Venezuela action. Even though plaintiff believes the Chevron complaint to be a malicious prosecution, only after the instant litigation has concluded and only if it terminates in plaintiff's favor, can a *plaintiff* bring a malicious prosecution against Chevron.

---

14. No issue regarding the coverage for bodily injury or property damage has been raised.

15. Arizona law provides that "[t]here are five elements to a claim for wrongful prosecution of a civil action. Plaintiff must prove defendant (1) instituted a civil action which was (2) motivated by malice, (3) begun without probable cause, (4) terminated in plaintiff's favor and (5) damaged plaintiff." *Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 416–417, 758 P.2d 1313, 1318–1319 (Az. 1988). Under Louisiana law, the elements of a malicious prosecution action are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. *Jones v. Soileau*, 448 So.2d 1268, 1271 (La.1984).

Further, Little ignores that an "occurrence" is defined to require that the personal injury be caused by the insured. Endorsement E provides *personal liability* coverage for an *insured's* tortious act, not the opposite where damages suffered personally by Little. Here, the plaintiff alleges that Chevron is maliciously prosecuting *him* and *not* that Chevron is claiming that plaintiff prosecuted Chevron.

Little also argues that Chevron's action for breach of the duties of good faith and fair dealing is an action for tort and, as such, are covered under the policy. Little has not pointed to any provision in the policy that defines personal injury to include these actions, and the court has found none.[16]

Little makes a similar argument that the policy covers him as the defendant in Chevron's breach of contract claim. He argues that the policy language in both the Umbrella Policy and the Homeowner's Policy obligates USAA to pay "damages an insured becomes *legally obligated to pay.*" Once again, Little seeks out only the language that supports him. As discussed, Little ignores that the claim must result from an **occurrence,** defined as an event proximately caused by the insured which **results in personal injury.** Little has not pointed to any language in the polices nor has the court has not found language that defines the term "personal injury" to include breach of contract.

Likewise, Little's Umbrella Policy contains substantially similar language that USAA will pay damages that arise from an "occurrence," which is defined identically as in the Homeowner's policy.[17] The undersigned thus concludes that Little's claim is not covered under the Umbrella policy.

Interpreting the policies under either Louisiana or Virginia law, giving the words their plain meaning, and reading the policy as a whole, Little's strained construction of the policy language would lead to absurd results and expand Little's coverage beyond what the parties intended. Accordingly, the undersigned finds that Little's interpretation of the policies lacks merit.

## II. Duty to Defend

### A. USAA's July 18, 2006 Denial Letter

Little alleges in his complaint that USAA's adjuster fraudulently misquoted the policy in its denial letter, and, when USAA failed to investigate further, USAA violated its duty of good faith and should be estopped from arguing Little has no coverage and no duty to defend.

According to Little, USAA stated that it was denying coverage because claim was not based on activities that were accidental in nature. Little ignores USAA's explanations that it was not covering the claim under the policy language because it is not an "occurrence" as a result of "personal injury." [18] Little again ignores policy lan-

16. "Personal injury" is defined to mean: a) wrongful eviction, wrongful entry; b) libel; c) slander; d) defamation of character; e) invasion of rights of privacy; f) wrongful detention, false arrest or false imprisonment; g) malicious prosecution or humiliation; h) assault and batter if committed by an insured or at his direction to protect persons or property. This applies only when the conduct is not criminal.

17. Definition 7(b) provides that an occurrence means: An event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any **insured,** which results, during the policy period, in **personal** injury, neither expected nor intended from the standpoint of the **insured.** (Rec. Doc. 7–3 at 55).

18. Rec. Doc. 11–3, p. 8.

guage, arguing that USAA has an obligation to defend him against the Chevron claim because of the broad language that it will defend him against even groundless, false or fraudulent suits. Little again ignores policy language that USAA will defend him only on claims that result from a defined occurrence.

 Under Louisiana law, if the complaint states any claim within the policy coverage's, the insurer is obligated to defend. 15 William Shelby McKenzie & H. Alston Johnson III, Louisiana Civil Law Treatise, Insurance Law and Practice, § 211 (3rd Ed. 2006) citing numerous cases, including *Alert Centre, Inc. v. Alarm Protection Services, Inc.*, 967 F.2d 161 (5th Cir.1992). In every case, the insurance company is held to a high fiduciary duty to discharge its policy obligations to its insured in good faith—including the duty to defend the insured against covered claims and to consider the interests of the insured in every settlement. *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 423 (La.1988).

Under Arizona law, "an insurer ... may not defend [a claim] that is not fairly debatable. But in defending a fairly debatable claim, an insurer must exercise reasonable care and good faith." *Zilisch v. State Farm Mutual Auto. Ins. Co.*, 196 Ariz. 234, 237, 995 P.2d 276, 279 (Az.2000).

Because the denial letter explained clearly that USAA was denying coverage because it interpreted the policy to the effect that Little's claim is not an "occurrence" because of a "personal injury," and which the court has concluded to be the interpretation that reflects the intent of the parties for which there is not even a possibility of coverage, I find that USAA should not be estopped from asserting any of its arguments and has no duty to defend under the policy.

## B. June 18, 2006 Letter

Plaintiff argues that the June 18 letter to him from USAA states that, "the policies may not provide coverage" and that the corollary to this language is that the policies could potentially provide coverage thus triggering the duty to defend. Rather than creating a duty to defend, this language clearly indicates that USAA had not made its final determination of coverage under the insurance contract, and, thus had not determined whether it had an obligation to defend. I therefore find this argument to be meritless.

### Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that USAA's motion to dismiss be **GRANTED** and that Little's complaint be **DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir.1996).**

Signed at Lafayette, Louisiana, on July 8, 2009.